## A. SMITH v. STATE.

### No. A-761.   Opinion Filed November 24, 1911.

#### (118 Pac. 1003.)

1. **DISORDERLY HOUSE—Prosecution—Evidence.** (a) In prosecutions for keeping a house of ill fame, it is competent to introduce evidence of the general reputation of the house in the neighborhood in which it is situated, as to its being a place where lewd and lascivious persons of both sexes congregate for the purpose of unlawful cohabitation or sexual intercourse.

   (b) Evidence of the general bad character and reputation and of lewd conduct of the inmates and frequenters of a house is competent, for the purpose of showing that such house is a house of ill fame.

2. **TRIAL—Misconduct of Prosecuting Attorney—Argument.** (a) Although the county attorney may have indulged in improper remarks in his closing address to the jury, yet, if such remarks, when objected to, are withdrawn from the consideration of the jury by the trial court, and there is no reason to believe in the light of the evidence that the defendant suffered injury thereby, such remarks will not be ground for a new trial.

   (b) Where the guilt of the appellant is clearly established, and there is no reason to believe that upon a second trial an intelligent and honest jury could or would reasonably arrive at any other verdict than that of guilt, a new trial will not be granted, except for fundamental errors.

(Syllabus by the Court.)

*Appeal from Noble County Court; H. E. St. Clair, Judge.*

A. Smith was convicted of keeping a disorderly house, and appeals. Affirmed.

Appellant was prosecuted by information for keeping a house for persons to visit for unlawful sexual intercourse. Upon the trial of this case, the following evidence was admitted:

A. C. Nicewander testified that he was the sheriff of Noble county, Okla., and was acquainted with appellant and knew that, on or about the 21st day of November, 1909, appellant was engaged in the business of running a rooming house and restaurant in the city of Perry, Noble county, Okla.; that on said date he found several women and a couple of men in the rooming house kept by appellant; that this was between 9 and 10 o'clock at

night; that he arrested the women and placed them in jail; that, upon being released the next day, they left town; that on the same night witness arrested four other women on the street near appellant's place of business; that witness had frequently seen women hanging around appellant's place of business at night; that the women arrested by witness, and women seen at other times at appellant's place of business, had a bad reputation for virtue, and were what is known as streetwalkers; that witness had seen such women hanging around appellant's place of business at all times of the night; that witness had frequently had occasion to enter the rooming house kept by appellant, and had seen men and women there frequently who had bad reputations.

J. R. Dale testified that he was deputy sheriff of Noble county, Okla.;.that he knew appellant; that in November, 1909, appellant was engaged in the business of running a restaurant and rooming house in the city of Perry, Noble county, Okla.; that between 9 and 10 o'clock, on the night of November 21, 1909, witness was with the sheriff of Noble county when two or three women were arrested in the rooming house kept by appellant; that two men were with one of the women; that the women arrested had the reputation of being prostitutes; that prior to this time witness had seen women hanging around appellant's place of business who had the reputation of being prostitutes.

Henry B. Harrison testified that he lived in Perry, and was acquainted with appellant, and was acquainted with his place of business; that, on or about the 21st day of November, 1909, he saw women hanging around appellant's place of business who had the reputation of being prostitutes; that on several occasions witness was accosted by such women, and requested to come and spend some money with them.

L. T. Shockey testified that he lived in Perry; that he was acquainted with appellant; that he knew his place of business during November, 1909; that during this time he knew that women hung around appellant's place of business who were known as streetwalkers in town.

A. F. Wilcoxen testified that he lived in Perry, and that he was acquainted with appellant, and knew his place of business during November, 1909; that he knew the reputation of women who had been arrested at appellant's place of business, and their reputation was that of being streetwalkers, or prostitutes.

Appellant testified in his own behalf that he kept a restaurant and rooming house in the town of Perry; that his place of business was kept for the public generally; that his patrons consisted of whites, negroes, and everybody else; that he was sick and in bed the night that the sheriff raided his house and arrested him, and made him get up out of bed; that the sheriff also arrested some women that night; that he told the sheriff the women arrested were married women; that he did not know of any unlawful sexual intercourse that had taken place in his house; that there were three men there that night, but the women arrested were not the wives of these three men; that appellant did not know of anything wrong going on in his house; that he kept it as nice as he could; that he did not know of any women going out of the rooming house, and accosting men to spend money with such women.

Appellant was found guilty by the jury, and his punishment was assessed by the trial court at a fine of $100.

*H. A. Johnson,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, P. J. (after stating the facts as above). First. In prosecutions for keeping a house of ill fame, it is competent to introduce evidence of the general reputation of the house in the neighborhood in which it is situated, as to its being a place where lewd and lascivious persons of both sexes congregate for the purpose of unlawful cohabitation or sexual intercourse, and also to prove the general reputation of either the men or the women, for virtue, who congregate at such house. See *Carroll v. State,* 4 Okla. Cr. 242, 111 Pac. 1021.

"Evidence of the general bad character, reputation, and conduct of the inmates and frequenters of a house is competent to show the character of the house." (Ency. of Evi. vol. 4, p. 727.)

See, also, 14 Cyc. p. 505, and authorities there cited. The court therefore did not err in overruling the objections of counsel for appellant to the testimony offered in this case.

Second. The record discloses the fact that the following occurred during the closing argument of the county attorney. The county attorney addressed the jury as follows:

"Gentlemen of the jury, the defendant's place of business is the worst house of prostitution in town, and a man was murdered in that vicinity once, and I ask you to find the defendant guilty, or else another murder will be committed there, and cost the county thousands of dollars, and by finding the defendant guilty is the surest way to prevent it. (To the foregoing statement of the county attorney the defendant by his counsel excepts, and moves the court to direct the jury not to consider the statements of the county attorney, for the reason that the same are prejudicial to the rights of the defendant, and wholly unsupported by the evidence.) The Court: Yes, gentlemen of the jury, you are instructed to disregard such statements of the county attorney; the same being improper."

It was error for the county attorney to state to the jury that a murder had been committed at the place of business kept by appellant; but it appears that as soon as objection was made to this remark the court instructed the jury that it was improper, and should not be regarded by the jury. If this was a close case, the ruling of the court in excluding the remarks of the county attorney might not have been sufficient to prevent injury therefrom to appellant; but in the light of the testimony, if a new trial were granted, there is no reasonable ground to believe that upon a second trial an intelligent and honest jury could or would reasonably arrive at any other verdict than that of guilt. It would therefore be a waste of time and an unnecessary expense, and an interference with the enforcement of law and justice, to set aside this verdict, merely because the county attorney, in the heat of argument, made improper remarks, when such remarks are promptly excluded from the consideration of the jury by the

trial judge. We believe that the verdict of the jury is right upon the evidence, and therefore the judgment of the lower court is in all things affirmed.

ARMSTRONG and DOYLE, JJ., concur.