## D. L. PATTERSON v. STATE.

No. A-1397. Opinion Filed June 7, 1913.

(132 Pac. 693.)

1. **DISORDERLY HOUSE—Burden of Proof—Gist of Offense.** On the trial of a person charged with keeping a bawdyhouse, the issue is, Did such person in fact keep a bawdyhouse? and not, Did he keep a house which had the reputation of a bawdyhouse?

2. **SAME—Gist of Offense.** The offense defined by the statute is not keeping a house which is reputed to be a bawdyhouse, but keeping one which is so in fact.

3. **SAME—Evidence—Admissibility.** It is competent to introduce in evidence proof tending to show that persons of immoral character resort to a place for immoral purposes on the trial of a person charged with keeping a bawdyhouse at such place.

4. **SAME—Sufficiency of Evidence.** For testimony upon which a conviction cannot be upheld, see opinion.

5. **SAME—"Bawdyhouse"—"House of Ill Fame."** The terms "bawdyhouse" and "house of ill fame" are synonymous.

(Syllabus by the Court.)

*Appeal from County Court, Jackson County;*
*E. E. Gore, Special Judge.*

D. L. Patterson was convicted of keeping a bawdyhouse, and appeals. Reversed and remanded, with directions.

*Garrett & Castleman,* for plaintiff in error.

*Smith C. Matson,* Asst. Atty. Gen., and *H. A. King,* Sp. Asst. Atty. Gen., for the State.

ARMSTRONG, P. J. The plaintiff in error, D. L. Patterson, was tried and convicted at the July, 1911, term of the county court of Jackson county on the charge of keeping a bawdyhouse, and his punishment fixed at a fine of $150. To reverse this judgment, an appeal was taken.

Of the various assignments of error, it is only necessary to notice the one: "That the evidence is insufficient to. sustain a conviction."

The language of the statute is as follows (section 2467, Rev. Laws 1910):

"Any person who keeps any bawdyhouse, house of ill fame, of assignation, or of prostitution, or any other house or place for persons to visit for unlawful sexual intercourse, or for any other lewd, obscene or indecent purpose, is guilty of a misdemeanor."

The relevant evidence on the part of the state was substantially as follows: John D. Bailey, the first witness called for the state, testified that he was sheriff of Jackson county, and was acquainted with the Blue Goose Rooming House, or Hotel, located in the town of Altus, near the Orient Depot and the defendant had been running the place two or three weeks, when on the day alleged in the information he went there with a search warrant and found two women upstairs in a room. He was then asked:

"Q. Did Mr. Patterson make any statement to you as to what these girls were doing there? A. He said the girls came there the night before, and he found them there that morning; that they said they wanted to stay there until they could get out on the train; and that he told them they could stay until he went up town to see the officers about it, and, if no objections, they could stay there until train time."

And that he said Jesse O'Daniel was running the place for him. He further testified that about two weeks before a

woman by the name of Cribbs lodged there one night; that she had the reputation of being a lewd woman, and was on her way to Texas.

F. E. Gardenhire testified that he was jailer and assisted the sheriff in serving the search warrant; that they took the two girls they found there and put them in jail, and they said that they were released from the city jail the day before and they had come there about 3 o'clock in the morning; that a man had brought them there, saying that he was an officer, and if they did not go with him and stay in the building that he would put them back in jail; that the defendant came there that morning and asked them what they were doing there, and they told him that they wanted to go out on the train that went to Elk City, and that he told them that it was too late to catch that train; that it was already gone, but told them they had to get out, and they told him there was no other train they wanted to leave on, and he promised them if they would stay in one room that he would let them stay there until their train came; that Claude Duke and Warren Tucker were in and around the place at the time.

M. L. Hankins, county attorney, testified that about May 1st the defendant told him that he was the owner of the Blue Goose, and that he was running it, and said he was cleaning it up and renovating it and was going to run a respectable place. That the general reputation of Jesse O'Daniel, Claude Duke, and Warren Tucker was that of men who associated with lewd women.

The defendant demurred to the testimony and asked the court to instruct the jury to return a verdict of not guilty in the case; which demurrer was overruled and motion denied.

The defendant as a witness in his own behalf testified: That he was a constable of Altus township; that he purchased or leased the premises about the 1st of May, two weeks prior to the arrest, and was endeavoring to conduct a re-

spectable business; that he did not live at the rooming house, but it was conducted for him by an employee; that when he left there Saturday evening the girls were not there, and he knew nothing about their presence at the place until he went there Sunday morning; that he told them they would have to get out, but would permit them to stay in one room until time for the next train to leave for Elk City; that shortly after the sheriff appeared and raided the place; that the other woman who had lodged at the place, Mrs. Cribbs, had two children with her and left for Texas the next morning; that he had given explicit instructions to his employees to permit no unlawful conduct on the premises and none had been permitted with his knowledge or consent; that as a peace officer he had assisted in raiding the place several times during the preceding year.

In order to make out the offense charged in the information, under our statute, two facts must be established by the evidence before the defendant can be lawfully convicted: First, that the house in question was a bawdyhouse, house of ill fame or assignation, or of prostitution, or place for persons to visit for unlawful sexual intercourse, or for any other lewd, obscene, or indecent purpose; and, second, that the defendant was the keeper thereof.

The offense defined by the statute is not keeping a house which is reputed to be a "bawdyhouse," but keeping one which is so in fact; the gist of the offense is the keeping of the house, irrespective of its fame. The statute aims at the fact, not the fame; at the substance, not the shadow. In some of the states similar statutes are construed to require proof that the house had an ill fame in order to convict, and that the words "ill fame" refer to the reputation of the house, so that it must both be a bawdyhouse and be reputed such. But we regard such a rule as illogical and unsound, as it amounts to saying that, however bad the house

is in point of fact, it is no offense under the statute to keep it, if it has not an ill fame.

The terms "bawdyhouse" and "house of ill fame" are synonymous. A "bawdyhouse," says Bouvier, "is a house of ill fame, kept for the resort and convenience of lewd people of both sexes." Says Mr. Bishop:

"The common and better interpretation is believed to be that the term 'house of ill fame' is a mere synonym for 'bawdyhouse,' denoting the fact, not the 'fame,' of it. And still, in matter of evidence, some courts allow the proof of the fact to be aided by the fame. Beyond which, express provisions in the statutes of a few of our states authorize, in these cases, proof of the reputation of the house in aid of the other proofs. And they are held not to violate our Constitution, though it would be otherwise if they made punishable the mere reputation, regardless of the fact." (1 Bish. New Crim. Law, par. 1088.)

Upon a careful consideration of the record it is our opinion that the evidence offered was not sufficient to sustain a conviction. There was no proof on the part of the state that any immoral conduct was ever permitted on the premises with the knowledge and consent of the defendant; and while this court recognizes the admissibility of evidence of the general reputation of a house as to being a place where lewd and lascivious persons of both sexes congregate for unlawful sexual intercourse, and that the prosecution is not required to show particular acts of lewdness or prostitution in the house, if the evidence demonstrates that it is resorted to by people of both sexes who are generally reputed to be of lewd and lascivious character, it is sufficient to authorize the jury, if they see fit, to find therefrom that it is a bawdyhouse. *Smith v. State,* 6 Okla. Cr. 380, 118 Pac. 1003; *Carroll v. State,* 4 Okla. Cr. 242, 111 Pac. 1021. See, also, *Nelson v. Territory,* 5 Okla. 512, 49 Pac. 920.

This rule of evidence we think is sound in principle and accords with nearly all the authorities on the subject. However, the only evidence of this character offered in the case

related to the fact that a woman and her children obtained lodging for one night, and two women of loose character obtained lodging on the night in question. This evidence is insufficient to sustain the charge. Even though the proprietor had knowledge of their reputation and character, however low such women have fallen, and however great an evil the existence of such a class in the community might be considered, still they are human beings and entitled to shelter, and there is no law which makes it a crime to give them shelter. The law only forbids the giving of shelter or lodging to such persons for immoral purposes. For this reason the facts in our opinion do not warrant a conviction, and as a matter of law the verdict is contrary to the evidence.

The judgment of the county court of Jackson county is therefore reversed, and the cause remanded, with direction to grant a new trial if additional testimony can be had to warrant such a proceeding.

DOYLE and FURMAN, JJ., concur.