## MRS. M. FRANCIS v. STATE.

No. A-3290.   Opinion Filed November 25, 1919.

(185 Pac. 126.)

1.   **EVIDENCE—Confessions—Establishment of Corpus Delicti.** The corpus delicti cannot be established alone by the uncorroborated extrajudicial confession of the accused.

2.   **DISORDERLY HOUSE—Evidence—General Reputation.** A legal conviction for keeping a bawdyhouse cannot be had upon evidence alone that the house in question has the general reputation where lewd and lascivious persons of both sexes congregate for the purpose of unlawful sexual intercourse.

3.   **SAME—Evidence of Character of Inmate.** That a girl is seen in a place having the general reputation of being a bawdyhouse, wearing a thin, low-necked, short dress, is not alone sufficient evidence that such wearer is a lewd person.

*Appeal from Superior Court, Creek County;*
*Gaylord R. Wilcox, Judge.*

Mrs. M. Francis was convicted of keeping a bawdy-house, and she appeals. Reversed and remanded, with instructions to grant a new trial.

*R. K. Robertson,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, Mrs. M. Francis, hereinafter called defendant, was charged with keeping a bawdyhouse, found guilty, and her punishment fixed at a fine of $500. To reverse the judgment rendered, she prosecutes this appeal.

Several errors are assigned and argued in defendant's brief; but, from the view we entertain of the case, we deem it necessary to review only the error assigned, "That the court erred in overruling the demurrer to the evidence," a motion, in effect, requesting a directed verdict for the defendant.

The evidence shows conclusively that the general reputation of the house in question in the community was that it was a bawdyhouse, and that the house was run by the defendant.

T. A. Wilson testified that he had a telephone conversation with the defendant; that he had talked to her once before; that he called the defendant's telephone number; that he was answered by one who said she was Mrs. Francis; that he could not swear that he knew her voice; that he was in the mercantile business and did not think she was often in his store; that he did not know that she called up the store over the 'phone. Thereupon the witness was requested to relate the telephone conversation that he had with the defendant, to which the defendant objected. The court overruled the objection, and the de-

fendant excepted. The witness then testified that in said 'phone conversation he asked the defendant if his boy was there; that she told him "he was not, that the girl he had stayed with was not there then; that if the boy came in there again she would see him and talk to him along the lines witness had talked to her."

John S. Woofter testified that he was sheriff of Creek county; that he knew the defendant and her place of business; that on or about the 12th day of March, 1917, he was there, and the defendant also; that there had been a complaint about the defendant running a bawdyhouse; that he went there to, and did, notify her that she must stop it, and she said she would; that at the time, besides the defendant, there were some girls there; that he thought he saw one or two men; that he never saw any dancing; that the girls did not have on any too much clothing; they just had on scanty house attire, just loose garments; that he did not know the girls; that he did not know their general reputation as to being girls who frequented and stayed around houses of prostitution and bawdyhouses; that he did not know their general reputation.

G. C. Whitehead testified that he was a deputy sheriff; that he had seen the defendant and knew where her place of business was; that he was at the place about March 12, 1917; that the defendant, two or three men, and some four or five women were there at the time; that he did not know the general reputation of any of them; that he did not see any of them in rooms; that L. E. Thompson was with him at said time; that he knocked on the door of a room in said house, and a woman opened it; that the room was dark, and that was the only time he found in said house a man and woman together; that he

did not remember whether or not anything was said by them about being husband and wife; that the girls were thinly dressed; that in passing between him and the light he could see their figures.

L. E. Thompson testified that he was a deputy sheriff; that he had seen the defendant a time or two and knew where her place of business was; that he was there about the 12th of March, 1917, and prior thereto; that the defendant was there when he was; that in one room a man was lying on the bed, he thought, and a lady sitting on the bed with a kimona on; that he was present when the sheriff and defendant had a conversation in said house, but did not remember the substance of it.

. Upon the conclusion of the evidence the defendant demurred thereto. The court overruled the demurrer, and the defendant excepted.

The defendant testified that, at the time she was charged with keeping a bawdyhouse, she kept a rooming house; that ladies, both single and married, and sometimes only men, roomed there; that the man and woman who were in the room, the door of which the officer required to be opened, were man and wife whose names were Hayden, and who roomed at her house two or three weeks after they were seen by the officers at night in the room together; that her said rooming house was upstairs, and her husband ran a cafe downstairs, and that she did not run a house of prostitution, or permit persons to congregate there for the purpose of having unlawful sexual intercourse; that she had never had a conversation over the telephone with T. A. Wilson, the witness for the state, of any character; that at the time Sheriff Woofter and his deputies raided her house two women were there, one of

whom was a nurse from Henryetta, who had been taking care of a sick woman, and Mr. and Mrs. Hayden were also there; that she had never had a conversation with said sheriff in which he notified her to, and in which she promised to, stop running a bawdyhouse; that she did have a conversation with him in which he told her that he had been told that the house was run "irregular," and that it had the reputation of being a bawdyhouse, and that she was supposed to be running a place of that kind, and that, if she was, she could not run it, and she replied she was not running that kind of a house; that at the time she was arrested she and her husband were living together in said house; that she knew the witness Wilson's son; and that so far as she knew he did not stay with a girl in her said house.

The defendant timely made a motion for a new trial upon the ground, among other grounds, "that the verdict of the jury is not sustained by sufficient evidence." The court overruled the motion, and the defendant excepted.

The general reputation of the house kept by the defendant is established beyond a reasonable doubt as being a house of ill fame; but there is no evidence tending to show that persons of both sexes who resorted to the house were persons of lewd and lascivious character, or that the inmates of said house were of other than chaste character, or that any immoral acts were committed in said house with the knowledge of the defendant. Hence the evidence is insufficient to sustain the conviction, unless the apparel worn by the girls seen in said house, and the statements alleged to have been made by the defendant to Wilson and to the sheriff, coupled with the general reputation of the house as a bawdyhouse, make out a case.

In a prosecution for keeping a bawdyhouse, undenied legal evidence that the house in question has the general reputation of being a bawdyhouse is not sufficient alone to sustain a conviction for keeping a bawdyhouse. *Mrs. B. Putman v. State,* 9 Okla. Cr. 535, 132 Pac. 916, 46 L. R. A. (N. S.) 593.

"The offense defined by the statute is not keeping a house which is reputed to be a 'bawdyhouse,' but keeping one which is so in fact." *Patterson v. State,* 9 Okla. Cr. 564, 132 Pac. 693.

The fact that girls were seen in said house wearing at night thin, low-necked short dresses certainly is not, in this age in which such apparel is commonly worn in the highest circles of society, equivalent to a "scarlet letter," stamping its wearers as persons of lewd and lascivious characters.

If it be conceded that the statements made by the defendant over the telephone, in response to the inquiry of Wilson as to the whereabouts of his son, "that his son was not there, that the girl he stayed with was not there," were properly admitted in evidence, which we do not hold, said statements were, at the most, only extra-judicial confessions tending to show her guilt. The alleged statement made to the sheriff, when notified by him that she must stop keeping a bawdyhouse, "that she would," is only another extrajudicial confession of defendant's guilt. And these confessions alone are not sufficient to establish the *corpus delicti* of the offense charged.

"The *corpus delicti* cannot be established alone by the confessions of the accused." *Frazier v. United States,* 2 Okla. Cr. 657, 103 Pac. 373.

It follows that the character of dress of girls seen in said house and the said extrajudicial confessions, when

coupled with the reputation of the house as being a bawdy-house, do not furnish evidence sufficient to warrant the conviction of the defendant of the offense charged.

Treating the demurrer to the evidence as a request for a directed verdict of acquittal, which is the uniform practice of this court, we are of the opinion that the court committed reversible error in not directing the jury to acquit the defendant. We are also of the opinion that the court also committed reversible error in overruling the motion for a new trial.

The judgment of the trial court is reversed, and the case remanded, with instructions to the trial court to grant the defendant a new trial.

DOYLE, P. J., and MATSON, J., concur.