## BURT BUXTON v. STATE.

No. A-5925.   Opinion Filed Aug. 8, 1927.
(258 Pac. 814.)

Jas. A. Embry, for plaintiff in error.

The Attorney General, for the State.

DOYLE, P. J.   On information charging that he did have possession of one quart of whisky with the unlawful intent of selling the same, Burt Buxton was tried and convicted, and in accordance with the verdict of the jury was sentenced to imprisonment in the county jail for 30 days and to pay a fine of $200. He prosecutes this appeal for a reversal of the judgment on the ground that the court erred in admitting evidence that was illegally obtained by an unlawful search of his home.   When arraigned defendant made a motion to suppress the evidence on the ground that the pretended search warrant did not contain his name or a description of the premises occupied by him as his home.   Thereupon the county attorney conceded that the search warrant was void.   However, the motion was denied.

The evidence on the part of the state showed that

appellant and his family occupied an unfinished house in the town of Davenport; that on the 5th day of July while engaged in shingling his house, two officers came there and searched the house, finding a quart of liquor.

Ves Messer, deputy sheriff and city marshal, testified:

"I and Mr. Caruthers and his boy visited the place. He (appellant) came off the roof with a hammer in his hand. He threw up his hammer and we pulled our guns. We searched the house and found a quart of whisky and a jug containing whisky. I emptied the quart bottle. In a way I considered I had a search warrant, and I arrested him."

Here the bottle and jug were offered in evidence.

The testimony of John Caruthers, chief of police, is substantially that given by the witness Messer.

All of the evidence was admitted over appellant's objections, and when the state rested there were motions to strike and for a directed verdict, which were overruled.

As a witness in his own behalf appellant testified: That he lived in Bella's addition to Davenport. That he was shingling his house when the officers came. That one came in the east door and one the west door with guns in their hands. Mr. Caruthers said: "If you move I will kill you." Two others pulled their pistols, and he begged them not to shoot him. That they searched the trunk, ice box, and everything, and took his quart of whisky.

The testimony of Mrs. Burt Buxton was substantially that as given by her husband.

In Jones v. State, 36 Okla. Cr. 180, 253 P. 310, we said:

"The admitted acts of the officers show that they

acted without authority of law, and that all the state's evidence was procured by an invasion of rights guaranteed by section 30 of the Bill of Rights, and that the same was admitted over the defendant's objection in violation of section 21 of the Bill of Rights. These sections are guaranties of American liberty and justice, which come to us from the same source as did those equally, but not more greatly, prized, whereby we are guaranteed religious liberty, trial by jury, the right to peaceably assemble, free speech, liberty of the press, and other constitutional safeguards. If the security of the person and the home are not protected by the Constitution, if unreasonable searches and seizures are to be permitted, trial by jury may be denied. If officers may upon suspicion search the persons and the homes of the citizens of our state, the right of the people to peaceably assemble, to freely speak, write, and publish are in danger.

"It was the boast of Lord Chatham that, though the wind and rain might enter the cottage of the English peasant, the king could not enter.

"In Smith v. State, 34 Okla. Cr. 434, 246 P. 1109, we said: 'The right of the citizen to occupy and enjoy his home, however mean or humble, free from arbitrary invasion and search, has for centuries been protected by every court in the English speaking world, from Magna Charta down to the present, and is embodied in every bill of rights defining the limits of governmental power in our own republic. The mere fact that a man is an officer, whether of high or low degree, gives him no more right than is possessed by the ordinary private citizen to enter and search the private premises of another for evidence of crime without a legal warrant procured for that purpose.' "

And see Howell v. State, 33 Okla. Cr. 292, 243 P. 997; McClary v. State, 34 Okla. Cr. 403, 246 P. 891.

In Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, the Supreme Court of the United States held:

"When properly invoked, the Fifth Amendment to the Constitution protects every person from incrimina-

tion by the use of evidence obtained through search and seizure made in violation of his rights under the Fourth Amendment to the Constitution."

Mr. Justice Butler, delivering the opinion of the court, said:

"The search of a private dwelling without a warrant is, in itself, unreasonable and abhorrent to our laws. Congress has never passed an act purporting to authorize the search of a house without a warrant. On the other hand, special limitations have been set about the obtaining of search warrants for that purpose. Thus, the National Prohibition Act, approved October 28, 1919 (chapter 85, tit. 2, § 25; 41 Stat. at L. 305, 315; Comp. Stat. § 10138½m, Fed. Stat. Ann. Supp. 1919, p. 215), provides that no search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or is in part used for business purposes such as store, shop, saloon, restaurant, hotel, or boarding house. And later, to the end that government employees without a warrant shall not invade the homes of the people and violate the privacies of life, Congress made it a criminal offense, punishable by heavy penalties, for any officer, agent or employee of the United States engaged in the enforcement of any law, to search a private dwelling house without a warrant directing such search. Act of November 23, 1921, c. 134, par. 6; 42 Stat. at L. 222, 223; Comp. Stat. § 10184a; Fed. Stat. Ann. Supp. 1921, p. 230. Safeguards similar to the Fourth Amendment are deemed necessary and have been provided in the Constitution or laws of every state of the Union. We think there is no state statute authorizing the search of a house without a warrant; and, in a number of state laws recently enacted for the enforcement of prohibition in respect to intoxicating liquors, there are provisions similar to those in paragraph 25 of the National Prohibition Act. Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, federal or state, for the search of a private dwelling house without a warrant. Absence of any judicial approval is persuasive authority that it is unlawful. See Entick v. Carrington, 19 How. St. Tr. 1030, 1066. Belief, however well founded that an

article sought is concealed in a dwelling house, furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause. See Temperani v. United States (C. C. A. 9th) 299 F. 365; United States v. Rembert (D. C.) 284 F. 996, 1000; Connelly v. United States (D. C.) 275 F. 509; McClurg v. Brenton, 123 Iowa 368, 372, 98 N. W. 881, 65 L. R. A. 519, 101 Am. St. Rep. 323; People v. Margolis, 220 Mich. 431, 190 N. W. 306; Childers v. Com., 198 Ky. 848, 250 S. W. 106; State v. Warfield, 184 Wis. 56, 198 N. W. 854."

It is well settled that the Fourth and Fifth Amendments to the Constitution of the United States apply only to officers and agents of the United States in proceedings under the federal laws, and that they do not apply to the states, nor to proceedings under the laws of the state. However, this court has followed the decisions of the Supreme Court of the United States in construing sections 21 and 30 of the Bill of Rights.

This court has many times held that search of private residence, not coming within exceptions in Comp. Stat. 1921, § 7013, is illegal. Cosby v. State, 30 Okla. Cr. 405, 236 P. 906; McClure v. State, 31 Okla. Cr. 60, 237 P. 145.

It is a well-settled doctrine in this state that under such circumstances it is not necessary for a person whose premises are being illegally searched to make or express objections thereto to avoid a waiver of his constitutional right. Smith v. State, 34 Okla. Cr. 434, 246 P. 1109; Whitford v. State, 35 Okla. Cr. 187, 249 P. 430; Shockley v. State, 35 Okla. Cr. 437, 251 P. 514.

Because all the evidence offered by the state was obtained illegally, the judgment is reversed, with direction to dismiss.

EDWARDS and DAVENPORT, JJ., concur.