## BILL STOUSE v. STATE.

No. A-9269.   June 25, 1937.
(70 Pac. 2d 145.)

Billingsley & Kennerly, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DOYLE, J. The information in this case in substance charges that in Seminole county, on August 21, 1936, Bill Stouse did have in his possession 30 pints of whisky with the unlawful intent to sell the same.

On the trial the jury returned a verdict finding him guilty and fixing his punishment at a fine of $300 and confinement in the county jail for six months.

To reverse the judgment rendered on the verdict he appeals and assigns as error: The overruling of his motion to suppress the evidence; the admission of evidence obtained by an unlawful search of his home; the overruling of his motion to strike such evidence; and that the verdict is contrary to the law and the evidence.

This conviction rests upon the testimony of Deputy Sheriff George Snider, the only state's witness who testified on the trial, and upon the evidence procured by a search and seizure in executing a search warrant which describes the place to be searched as follows:
"by the following named persons, namely:

"One Stout

"and upon the following described premises, located as follows:

"Starting at Strother St. in the city of Seminole, Okla. going two miles north on Highway No. 48 thence west about ¼ mile to Good Hope schoolhouse, thence south about 300 yards, to a small unpainted house, in Section 16 Twp. 9 Range 6 East.

"in Seminole County, Oklahoma."

When the case was called for trial, counsel for defendant filed a motion to suppress the evidence of the finding of the whisky in his home, because the same was obtained by means of an unlawful and unreasonable search and seizure in violation of his constitutional rights. The motion challenged the sufficiency of the affidavit for the search warrant as well as the warrant issued thereon.

The undisputed evidence in support of the motion to suppress shows that there are 17 two-room houses along the west side of the road south of the Good Hope schoolhouse, all facing east; that all of these houses, with the exception of one or two, were unpainted oil field shacks, and all of similar appearance and design.

The defendant testified that he spelled his last name "S-t-o-u-s-e"; that his house is 400 yards or more south of the schoolhouse, and 12 of these houses are between his house and the schoolhouse. He produced the copy of the search warrant served by Officer Snider and it was admitted.

George Snider, deputy sheriff, called as a witness for the state, testified that in executing a search warrant with Charley Cannon they searched the defendant's home.

He further testified:

"Q. How did you locate Bill's house with this search warrant which reads: 'From Good Hope schoolhouse thence south about 300 yards to a small unpainted house'? A. I judged by the distance which we drove down the road; when we got to this particular place we noticed the traffic stopped there and we said this must be the place. Mr. Cannon knocked on the front door. A lady came to the door and we asked her if this was where Bill Stouse lives and she said 'yes.' By the Court: Q. If there had been

but one single traffic track down that little road there and you had this search warrant with this description, which house would you have stopped at? A. I can't say about that, I judge by the distance there in the search warrant, I can't say which one I would have stopped at. Q. Which did you pay more attention to, the distance or the traffic? A. I can't say, one about as much as the other I guess."

The motion to suppress is overruled; exception reversed.

It is contended that the search warrant was void, because of the variance between the name alleged "One Stout" and the defendant's name, and that neither affidavit nor warrant based thereon particularly describes the place to be searched, therefore, the same were void because in conflict with the provision of the Bill of Rights, declaring that:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized." Const. art. 2, § 30.

And that said warrant was issued in violation of the statute which authorizes the issuance of such warrants. Section 2638, St. 1931 (37 Okla. St. Ann. § 87).

Section 2635 (37 Okla. St. Ann. § 84) provides that the warrant shall command a search of "the premises described and designated in such complaint and warrant."

In cases of this kind the name of the owner or occupant is employed to designate or describe the place; it particularizes the place, for a person may own many places, but as a usual thing occupies only one.

It will be observed that the name of the person occupying the place to be searched is described in the search warrant as "One Stout." The defendant's name is spelled "S-t-o-u-s-e." This variance is a misnomer. When a name which is material to state in a complaint and search warrant is wrongly spelled, yet, if it be idem sonans with that proved, it is sufficient. The rule seems to be that, where two names are spelled differently but sound alike in their pronunciation, they are regarded as the same, under the doctrine of idem sonans.

Obviously, the names "Stout" and "Stouse" are not idem sonans.

Upon the undisputed facts and the state's testimony, it is evident that the description of the place to be searched was so indefinite that the officers might have searched any one of five or six similar small unpainted houses about 300 yards south of the Good Hope schoolhouse.

In Shanafelt v. State, 38 Okla. Cr. 345, 261 Pac. 380, it is said:

"It is well settled that the description must be sufficiently definite that no discretion is left to the searching officer as to what place he is authorized to search. It will be observed from the foregoing affidavit that the location of the place to be searched is made no more definite than 'a mile northeast of Leonard in sec. 26.' The mere section number is not sufficiently definite as a numerical description. The description may be made definite by particularly describing the location of the house in such manner that it could not be confused with any other house, as by describing the owner of the house, the occupant of the house, or the particular place or location of the house in its relation to natural objects. In the case of Brandt v. State, 34 Okla. Cr. 400, 246 Pac. 1106, this court said:

" 'Affidavit for search warrant, describing the place to be searched as a certain section of land, and without naming the owner, is insufficient to furnish the particular description of the place to be searched, where it appeared that the land so designated was owned and occupied by several persons, so that it was in fact several places.' "

In Bryson v. State, 59 Okla. Cr. 130, 56 Pac. (2d) 1198, this court held:

"Affidavit for search warrant and search based thereon must so particularly describe place to be searched that searching officer has no discretion, but many determine from warrant particular place to be searched." And see Wofford v. State, 40 Okla. Cr. 18, 266 Pac. 494; Dobbins v. State, 40 Okla. Cr. 146, 267 Pac. 678; Clanton v. State, 59 Okla. Cr. 365, 60 Pac. (2d) 415.

The fundamental law of the United States and of the state of Oklahoma alike guarantee to the people security of their persons, houses, and possessions from unreasonable search and seizure. The courts have ever protected the sanctity of the home, and will always guard with zealous care the citizen's indefeasible right of personal security, personal liberty, and private property, where that right has not been forfeited by his conviction of some public offense. Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; Wiese v. State, 32 Okla. Cr. 203, 240 Pac. 1075; Jones v. State, 36 Okla. Cr. 180, 253 Pac. 310; Buxton v. State, 37 Okla. Cr. 402, 258 Pac. 814.

It was the boast of Lord Chatham that, though the wind and rain might enter the cottage of the English peasant, the king could not enter.

The right of the citizen to occupy and enjoy his home, however mean or humble, free from arbitrary invasion

and search, has for centuries been protected by every court in the English speaking word, from Magna Charta down to the present, and is embodied in every bill of rights defining the limits of governmental power in our own republic. Smith v. State, 34 Okla. Cr. 434, 246 Pac. 1109; Denton v. State, 62 Okla. Cr. 8, 70 Pac. (2d) 135.

It follows from what has been said that the search and seizure in this case was an unauthorized trespass, and that the state's evidence was improperly admitted over the defendant's objections and in violation of his constitutional and statutory rights.

For the reasons stated, the judgment of the lower court is reversed, and cause remanded, with direction to dismiss.

DAVENPORT, P. J., and BAREFOOT, J., concur.