## OTTO THOMAS v. STATE.

No. A-9435.    May 6, 1938.
(79 P. 2d 625.)

Meacham, Meacham & Meacham, of Clinton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Milton Keen, Co. Atty., of Clinton, for the State.

BAREFOOT, J. The defendant was charged by information in the county court of Custer county with the crime of having unlawful possession of three gallons of intoxicating liquor with intent to sell the same. He was tried, convicted, and sentenced to pay a fine of $100 and serve 90 days in the county jail. From this judgment and sentence he has appealed.

The overruling of defendant's motion to suppress the evidence by reason of the service of an illegal search warrant is the first issue presented. A hearing was had upon this motion before the trial of the case. The court, after hearing the testimony, overruled the motion and defendant excepted. It was shown that a search warrant was issued, based upon

an affidavit of J. R. Greer, chief of police of the city of Clinton, in which it was stated that certain intoxicating liquor was being manufactured, sold, and otherwise furnished, contrary to law, by one Otto Thomas, "On the following described premises, at and in the residence, * * * situated upon the real estate located in Custer county, state of Oklahoma, described as follows: lots 21 and 22 in block 1, Lincoln addition to the city of Clinton, Oklahoma. That said residence * * * are used as a place of public resort, and for the storage and furnishing of intoxicating liquors." The search warrant issued in pursuance of said affidavit, among other things, stated:

"That said liquor was being disposed of and kept in the manner aforesaid by Otto Thomas, at and in the residence * * * situated in and upon real estate located as follows: Lots 21 and 22 in block 1, Lincoln addition to the city of Clinton, Oklahoma."

It also directed the officers to seize any liquor found on said premises, and to make a return of the warrant within three days, etc. One of the officers to whom the warrant was directed made a return showing that the warrant was served upon Otto Thomas and there was found in his possession "six half gallon fruit jars of whisky, canyon run," at his place of residence, lots 21 and 22 of the Lincoln addition, under the floor of the house at the southwest corner.

The defendant, in support of his motion to suppress the evidence, testified that he and his wife lived in the south room of the two-room house, located upon the said above-described lots; that his sister and her husband, Jim Henry, lived in the north room; and that there was a door and wall between them. On cross-examination he testified that "Jim Henry had been with me for a long time and after the raid he was there a week and a half I should think," but later stated that he was separated from his wife and remained there and was there at the time of the raid. He further testified that there were two cookstoves, one in the south

room and one in the north room, and testified that he had the place rented and that he paid $7.50 per month, and was paying the gas and water bills; that his brother-in-law was paying him $1.25 a week for the north room. His wife corroborated this testimony. Neither Jim Henry nor the sister of the defendant appeared as a witness.

J. R. Greer, the chief of police of the city of Clinton, testified that there was no cookstove in the south room; that there was a sewing machine and a bed in the south room and that there might have been a radio. The witness testified that in the north room there was a bed, cookstove, cooking utensils, groceries, but testified that he found no groceries in the south room, and that it was in the south room where the officers made the search which resulted in finding the liquor, the liquor being found under the floor, and under the linoleum where was situated a trapdoor. This officer also testified to the finding of an empty fruit jar in the south room which had contained whisky, and that he asked the defendant in reference to this empty jar and that the defendant told him that he had sold that the night before. The testimony of this officer was corroborated by Officers Bill Armstrong and Jack Smith, who also assisted in the search of the premises. It is the contention of the defendant that the court erred in overruling the motion to suppress the evidence, and in support of this proposition counsel cites the cases of Stouse v. State, 62 Okla. Cr. 46, 70 P. 2d 145; Lucas v. State, 56 Okla. Cr. 413, 41 P. 2d 131; Wiese v. State, 32 Okla. Cr. 203, 240 P. 1075; Myer v. State, 34 Okla. Cr. 421, 246 P. 1105; Eastridge v. State, 57 Okla. Cr. 323, 48 P. 2d 869. We have carefully read the above cases and we think the facts in those cases are clearly distinguishable from the facts in the case at bar. In the Stouse Case the affidavit and warrant described the person as "one Stout," the name of the defendant was Stouse. The court held that these names were not idem sonans. The description described the premises as follows:

"Starting at Strother St. in the city of Seminole, Okla., going two miles north on Highway No. 48 thence west about ¼ mile to Good Hope school house, thence south about three hundred yards, to a small unpainted house, in section 16 twp. 9, range 6 east, in Seminole county, Oklahoma."

The evidence revealed that there were 17 two-room houses along the west side of the road south of the Good Hope schoolhouse, all facing east; that all of these houses, with the exception of one or two, were unpainted oil field shacks, and all of similar appearance and design. Under these circumstances the court held that the description was insufficient, and we think the facts in that case are entirely different from the facts in the case at bar.

In the Lucas Case the liquor was found in a kitchen that was jointly used by several people who lived in an apartment. The defendant lived in the northeast room and the whisky was found in the kitchen, which was another room and over which the defendant had no authority or control. He testified that he did not have any whisky in his possession and knew nothing about the whisky until the officers came there. The description in the search warrant called for a search, describing the premises as an apartment, upstairs, on lots 19 and 20, Elk City. It was shown that several parties used the kitchen in common. It will thus be seen that the facts in that case are entirely different from the facts in the case at bar.

The Wiese Case was reversed upon the questions propounded by the county attorney, and the argument of the county attorney, he having argued to the jury that the defendant was a farmer and had lived here twenty-five years without taking out naturalization papers. The search warrant and affidavit described the property as being a certain section of land. The defendant only owned a quarter section of the same and there were other houses located upon the section other than the one in which the defendant lived. The search warrant did not state that it was a place of public

resort and was based upon information and belief. It will thus be seen that the reasons the court reversed this case were not such as is here urged.

In the Myer Case the court held (page 1106):

"This writ was intended to operate and did operate as a blanket search warrant covering the private places of abode of several people, and was therefore void."

And clearly does not fall within the facts of the case at bar.

In the Bryson Case, Bryson v. State, 59 Okla. Cr. 130, 56 P. 2d 1198, the warrant was directed to Louis Ogletree, who had a room and was employed by defendant. The officers searched the room of Louis Ogletree and also the room of defendant Bryson. The search warrant called for the searching of the northwest quarter of section No. 11, township 5 south, range 8 west. Other houses were located upon this quarter section, and the court held that under these circumstances the search was illegal. It will thus be seen that the facts in the instant case are very different from the cases cited by defendant.

It is contended by the defendant that the affidavit and search warrant do not state that defendant owned and occupied the place to be searched. We do not think that the record bears out this statement. We have heretofore quoted from both the affidavit and search warrant, and it will be seen that the name "Otto Thomas" is mentioned both in the affidavit and in the search warrant. He was present at the time the search was made and was delivered the search warrant and testified that he lived on the property described both in the affidavit and search warrant. The defendant admitted that he had the entire place rented; that he was paying the water and gas bills, and that at the very most his brother-in-law merely had a room rented, and the whisky was not found in the room of the brother-in-law, but was found under a trapdoor under a floor of the room occupied by

the defendant and his wife. We do not think there is any merit in the contention that this two-room house constituted two different homes.

It is further contended by defendant that the court erred in admitting testimony as to the reputation of defendant's home as being a place where liquor could be obtained, and in support of this contention cites the case of Eastridge v. State, 57 Okla. Cr. 323, 48 P. 2d 869. This question has been before this court in different forms many times, and from a reading of the cases it appears at first blush that some of the decisions may be conflicting, but a careful reading of them will show that different questions were involved in each case, and that the facts were totally dissimilar in many instances. The ones that were reversed were generally where the evidence was weak and insufficient to support a conviction. Cases which have been based upon similar questions involved are: Proctor v. State, 8 Okla. Cr. 537, 129 P. 77; Thompson v. State, 9 Okla. Cr. 525, 132 P. 695; Wilkerson v. State, 9 Okla. Cr. 662, 132 P. 1120; Kirk v. State, 11 Okla. Cr. 203, 145 P. 307; Upton v. State, 12 Okla. Cr. 593, 160 P. 1134; Ward v. State, 15 Okla. Cr. 150, 175 P. 557; Hurst v. State, 25 Okla. Cr. 102, 219 P. 151; Williams v. State, 25 Okla. Cr. 284, 220 P. 667; Severns v. State, 31 Okla. Cr. 281, 238 P. 217; Eastridge v. State, 57 Okla. Cr. 323, 48 P. 2d 869; Thornhill v. State, 58 Okla. Cr. 114, 50 P. 2d 415. And cases cited therein.

From a reading of the above cases it will be noted that many propositions of law have been firmly established. Among those propositions are:

First. That where a person is charged with the sale or conveying of intoxicating liquor by a specific transaction, and it is not necessary to prove intent, evidence of the reputation of the defendant as being a bootlegger, or evidence of the reputation of the place, is not admissible. Wilkerson v. State, 9 Okla. Cr. 662, 132 P. 1120; Kirk v. State, 11 Okla. Cr. 203, 145 P. 307; Carroll v. State, 4 Okla. Cr. 242, 111 P.

1021; Smith v. State, 6 Okla. Cr. 380, 118 P. 1003; Ostendorf v. State, 8 Okla. Cr. 360, 128 P. 143; Putman v. State, 9 Okla. Cr. 535, 132 P. 916, 46 L.R.A., N.S., 593; Edmons v. State, 9 Okla. Cr. 603, 132 P. 923; Hurst v. State, 25 Okla. Cr. 102, 219 P. 151.

Second. In cases dealing with the question of houses of ill fame, or maintaining a place where intoxicating liquors are sold, amounting to a nuisance, the character of the house, or the place kept, is an element of the offense, and in such cases the general reputation of the house may be properly shown.

Third. Where a party is charged with the unlawful possession of intoxicating liquor, or where that possession is found in the home of defendant, evidence of the general reputation of the defendant's home as being a place where intoxicating liquor is sold, or as being a place of public resort, is admissible when the proper predicate has been laid for such testimony. This predicate is laid by offering proof to show that it is a place of general resort. This doctrine was announced and upheld in the Eastridge Case, supra, which was cited by defendant.

Most of the cases above cited were decided prior to July 11, 1933, when an act of the Legislature was approved by the legal voters of this state at a referendum election, making the possession of in excess of one quart of intoxicating liquor prima facie evidence of an "intent" to sell, convey, or otherwise dispose of such liquor found in one's possession. Okla. Stats. Annotated, title 37, p. 567, § 82. In the instant case, the amount of liquor found in the possession of defendant was over three gallons, and the court instructed the jury that the having or keeping in excess of one quart of intoxicating liquor should be deemed "prima facie" evidence of an intention to sell, convey, or otherwise dispose of said liquor, but the possession of said amount did not make it obligatory upon them to convict after the presentation of

such proof, but that if, after a consideration of all the evidence, they were satisfied beyond a reasonable doubt as to the guilt of the defendant, it would be their duty to convict. The jury, under this instruction, were given the right in determining the question of "intent" on the part of the defendant, to take into consideration this evidence along with all the other evidence in determining the guilt of the defendant. The officers who testified as to the reputation of defendant's home as being that of a place where intoxicating liquor could be had or obtained previously testified that he "had seen a number of people going to and coming from there, especially at night." The next question was:

"Q. What was his reputation in that regard? A. It had the reputation of being a place where intoxicating liquors could be obtained."

No exception was taken to this question, and no motion to strike it out, and, while the testimony was not strong, we believe that under all the circumstances the court did not err in overruling the motion for a new trial on this ground.

It is well known that in the early days of this state intoxicating liquor was generally sold from a public place. These were known as "joints"; so the early cases, in many instances, dealt with questions where liquor was sold from these public places. With the more stringent enforcement of the prohibition laws, individuals began to sell by carrying bottles upon their person. In late years, under stricter enforcement, and under the protection of their homes, there were those who have sought to make their homes a place of storage, and in some instances a place of public resort, where individuals can go and congregate for the purpose of illegally purchasing intoxicating liquors, and there drinking and consuming the same. This court has always protected the home from illegal search and seizure. The many decisions of the court will reveal the sound reasons upon which these decisions are based. McHenry v. State, 61 Okla. Cr. 450, 69 P. 2d 90; Denton v. State, 62 Okla. Cr. 8, 70 P.

2d 135, and cases cited therein. But at the same time, when the proof shows that it is being used as a place of public resort, for the purpose of storing intoxicating liquors, and for the further purpose of illegally selling the same, it then ceases to be entitled to the protection afforded under the Constitution, and the Legislature of this state has provided that, when certain fundamental conditions are complied with, the right of search and seizure of the home shall be upheld. Okla. Stats. 1931, § 2639, Okla. St. Ann. tit. 37, § 88. It follows, therefore, that, where the proper predicate is laid, showing that the home of the defendant was a place of general resort, it was permissible to prove its reputation, where the defendant was charged with the crime of unlawful possession of intoxicating liquor. This for the purpose of proving the "intent" for which defendant had said liquor.

It is next urged that the sentence in this case should be reduced. The defendant is a negro. The record does not disclose that he has ever had any previous conviction. There is no doubt that he had the three gallons of liquor found in his possession for the purpose of sale. From a consideration of all the facts in this case we have come to the conclusion that the ends of justice, both for the county and the defendant, would be best served by reducing the punishment in this case to a fine of $100 and 30 days in jail.

With this modification, the judgment of the county court of Custer county is affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.