## WALTER STEWART v. STATE.

No. A.-10604.    Nov. 20, 1946.

(174 P. 2d 926.)

John W. Porter, of Muskogee, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., and Douglas Garrett, County Atty. of Muskogee County, of Muskogee, for defendant in error.

BAREFOOT, J. Defendant, Walter Stewart, was charged in the county court of Muskogee county with the crime of operating a bawdy house, or a house of ill fame, was tried, convicted and sentenced to serve a term of 30 days in the county jail, and has appealed.

Defendant presents eight assignments of error. In his brief they are presented under two heads:

(a) That the court erred in refusing to suppress the evidence on the motion filed by defendant, on the ground that the officers did not have a search warrant at the time of searching defendant's premises. (b) That the court erred in refusing to sustain defendant's demurrer to the evidence, and that the verdict is contrary to the evidence.

By reason of the decision to be rendered in this case, we will consider the second assignment of error.

Defendant was the owner and manager of a tourist camp consisting of 12 cabins located in the city of Muskogee, in Muskogee county. He was charged with operating a bawdy house on November 17, 1944. On that date his tourist camp was raided between 2 and 3 o'clock in the morning by four policemen of the city of Muskogee and two military policemen from Camp Gruber, a nearby military camp.

At the trial of this case, three of the city policemen and the two military policemen testified for the state. They all testified to being present at the search, and that they had not previously secured and did not have a search warrant. That they went to each of the cabins and knocked

and demanded entrance. In a number of the cabins they found soldiers and women occuping the same bed. In one of the cabins, one of the women attempted to escape through a back window, but was captured by the officers. In all, ten women were taken in charge and placed in the city jail at Muskogee. Eight soldiers were taken in charge by the military police and returned to the military camp.

After the search, or raid, had been completed and the girls or women placed in jail, two of the city policemen returned to the camp, and when they arrived the defendant was standing in the office door, where he lived with his family. Demand was made of him for his register, and it was turned over to the officers, and introduced in evidence showing the names registered from November 4th, up to and including November 17, 1944. Defendant did not object to the introduction of the register sheet for November 17th, the date of the raid, but did object to the introduction of the register sheets for other dates.

After testifying to the above facts by all of the officers the city policemen testified, and theirs was the only testimony, that they recognized some of the girls by their faces as having been previously arrested in the city of Muskogee for prostitution. An attempt was made by the state to introduce records from the police court, but they were withdrawn and not introduced in evidence. There was no evidence by the state to connect the defendant with knowledge of the character of the parties arrested, or to show that he had any knowledge that prostitution was being carried on in the cottages. There was no evidence that the camp had the reputation of being a place where prostitution was carried on, or that defendant had any previous knowledge that it was being carried on. The only circumstance was that the names of a number of the girls or wom-

en appeared upon the register at numerous dates between the 4th and the 17th of November. None of these names, however, appeared upon the register on the 17th of November, the date charged in the information, nor was there any direct evidence that these were there on November 17.

Defendant was charged under 21 O. S. 1941 § 1025, which reads:

"Every person who keeps any bawdy house, house of ill fame, of assignation, or of prostitution, or any other house or place for persons to visit for unlawful sexual intercourse, or for any other lewd, obscene or indecent purpose, is guilty of a misdemeanor and upon conviction shall be fined in any sum not less than one hundred dollars nor more than five hundred dollars for each offense."

This statute has been in force in this state for many years, and its construction and application has been before this court numerous times. Under the early decisions, it was held that evidence of the general reputation in the neighborhood of the house as to its being a place where lewd persons of both sexes congregate for unlawful cohabitation or sexual intercourse was admissible in evidence where one was charged under the above statute. Carroll v. State, 4 Okla. Cr. 242, 111 P. 1021; Putman v. State, 9 Okla. Cr. 535, 132 P. 916, 46 L. R. A., N. S., 593; Patterson v. State, 9 Okla. Cr. 564, 132 P. 693; Jones v. State, 10 Okla. Cr. 79, 133 P. 1134.

No evidence was offered by the state in the case at bar to prove the general reputation of the place of business of the defendant. In fact, the testimony above stated was the only evidence offered against the defendant. The early cases were generally concerning rooming houses and hotels. Smith v. State, 6 Okla. Cr. 380, 118 P. 1003; Francis v. State, 16 Okla. Cr. 543, 185 P. 126; Wells v. State, 27 Okla.

Cr. 370, 228 P. 177; Bates v. State, 43 Okla. Cr. 195, 277 P. 676; Ridenhour v. State, 57 Okla. Cr. 167, 46 P. 2d 379; Flanagan v. State, 74 Okla. Cr. 127, 124 P. 2d 270; Hendrix v. State, 82 Okla. Cr. 110, 166 P. 2d 787.

We do not find that the question of the modern tourist camp being a "bawdy house" has been before this court, but the same principles as applied to rooming houses and hotels would apply to tourist camps. We have carefully read the cases above cited. In a number of them the cases have been affirmed, and in others reversed by reason of the insufficiency of the evidence.

The case of Jones v. State, supra, was affirmed, but the evidence in that case was much stronger than in the instant case. In fact, there is practically no evidence here that defendant was knowingly conducting a bawdy house. In the Jones case, a very good instruction was given defining to the jury the facts necessary to be proven before one could be convicted under the above statute, and this instruction was given by the court in the instant case; but, as stated by defendant in his brief, the facts did not justify a conviction under the terms of this instruction.

It is possible that sufficient evidence to convict the defendant under the statute above quoted could have been obtained, but this evidence does not appear in the record, and for that reason it becomes our duty under the law to reverse this case.

From the above statement, it is unnecessary for us to pass upon the question of the overruling of the motion to suppress the evidence by reason of the search of defendant's premises without a search warrant. However, it may be said that it would have been a very easy matter for the officers to have secured a search warrant before conduct-

ing this search. Had they done so, this question would not have been presented. Duffey v. State, 79 Okla. Cr. 218, 153 P. 2d 629.

For the reasons above stated, the judgment of the county court of Muskogee county is reversed, and unless the county attorney has other evidence which in his opinion would justify a retrial of this case, defendant should be discharged.

JONES, P. J., concurs. DOYLE, J., not participating.