### H. K. REUTLINGER v. STATE.

No. A-4411. Opinion Filed Feb. 28, 1925.
Rehearing Denied May 2, 1925.
(234 Pac. 224.)

(Syllabus.)

1. Searches and Seizures—Affidavit for Search Warrant Should State Facts, not Conclusions. An affidavit for a search warrant which merely states the conclusions of the affiant, indicative of a positive violation of law, is insufficient. The affidavit should state the facts upon which the conclusion is based.

2. Same. The finding of probable cause, as well as the issuing of the search warrant, is a judicial function to be exercised by the magistrate alone, upon the sufficiency of the facts stated in the affidavit, which should have the force and effect of evidence, as distinguished from the mere conclusions of the affiant.

**3.    Same—Legal Arrest Without Warrant—Seizure Without Search Warrant of Tools and Implements Used.** Where one is legally apprehended by a peace officer in the act of violating the law, he may be arrested without a warrant and, as an incident to the arrest, the officer may without a search warrant seize the tools and implements manifestly used in violation of the law.

**4.    Same—Search and Seizure Without Warrant not "Unreasonable" Where Made in Waste Places.** A search and seizure without a warrant is not "unreasonable," within the meaning of the Constitution, where it is made in canyons, pastures, or waste places remote from human habitation.

**5.    Same—"Place to be Searched" Should be Particularly Described.** "The place to be searched," within the meaning of the Constitution, should be particularly described, but may include all of the contiguous real property in the exclusive possession of the offender, however large or extensive. For example, a ranch containing several hundreds of acres.

**6.    Embezzlement—Carrier Charged with Embezzlement Cannot Question Consignor's Title.** Under the circumstances in this case, where a private carrier is charged with the embezzlement of goods consigned to him for carriage, the accused cannot defend upon the ground that the goods did not belong to the consignor, or question the right of the consignor to contract for the transportation of the goods.

Appeal from District Court, Woods County; Arthur G. Sutton, Judge.

H. K. Reutlinger was convicted of embezzlement, and he appeals. Affirmed.

A. J. Stevens, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, P. J.   H. K. Reutlinger, plaintiff in error, defendant in the trial court, was convicted of the embezzlement of certain contraband goods taken and delivered to him for transportation by the sheriff of Woods county. His punishment was fixed by the jury at confinement in the penitentiary for a term of three years and one month.

In order to make clear the issues of law and fact in-

volved in this appeal, a somewhat extended statement of the outstanding features of the evidence becomes necessary.

This prosecution arose as a sequel to a search and seizure of a large quantity of whisky, with vessels, tools, and appliances, in the rough hills and brakes of a pastoral region about 40 or 45 miles from Alva, the county seat of Woods county—a country occupied chiefly by the owners of vast cattle ranches. Some one had informed the sheriff that whisky was being manufactured on a large ranch, a portion of which was in charge of a man named Odgen. The defendant Reutlinger was a neighbor of Odgen, whose domain comprised 2,160 acres. The two men resided seven miles apart.

Early one May morning, while it was still twilight, the sheriff and three of his deputies appeared where Odgen was operating two whisky stills, apparently finishing up the previous night's run. By authority of a search warrant they seized about 100 gallons of whisky, together with a lot of barrels, implements, and other property, including two stills, copper worms, condensers, a wagon, a Ford car, and army tent, some harness, several galvanized iron water tanks, some sacks of sugar, corn chop and other grain, and several drums of gasoline.

The officers came to this place in two small automobiles, and were therefore unable to convey more than a small portion of the property seized to the county seat. They went to the ranch home of the defendant, 7 miles distant, and telephoned to Alva for an automobile truck to assist in transporting the things seized, and at the same time employed the defendant to furnish and drive a wagon, equipped with a hayrack, drawn by four horses, to carry into Alva the remainder of the things, after loading the automobiles and the truck. The loading of the conveyances was not completed until some time in the afternoon.

In the meantime, neighbors and others who had heard

about the raid asembled at the place.   Several kegs of whisky were loaded into the automobiles and the truck, but all this time there was an open barrel of whisky standing near the house, with an empty baking powder can, which was used as a drinking cup.   Before and while these conveyances were being loaded, the defendant repaired to this barrel and took some five or six drinks.   The evidence does not disclose how often or how much the others imbibed but, from the fact that several of those present at the time, afterwards called as witnesses in the case, could not remember very definitely or state very accurately just what articles were placed in defendant's wagon and hayrack, it is probably fair to assume that others besides the defendant used this baking powder can cup pretty freely.   Finally, after all the conveyances were loaded, they all moved off towards Alva.   Before starting the defendant thoughtfully made provision for liquid refreshment en route.

The automobiles and truck soon left defendant's slower conveyance in the rear, and the defendant did not arrive in Alva until about 3 o'clock the next morning.   The defendant at this time was in an advanced stage of intoxication, and with assistance he was put to bed, where he slept until late that evening.   It was claimed that when the defendant arrived at Alva a tent, a galvanized stock water tank, a set of harness, some sugar, and a gasoline lantern, which had been placed upon the defendant's wagon, were missing.   The defendant and some other witnesses were not very certain as to just what articles were put on defendant's wagon, or just what was on the wagon when it arrived at its destination. The defendant claimed that the sugar, and possibly some other things, were taken from him by force after midnight, while in transit, by some persons in two automobiles, one of whom was from the Odgen ranch.

The officers suspected that the defendant had unloaded the sugar, the tent, the harness, the lantern, and possibly

one of the galvanized water tanks at his home or ranch, which he had passed in coming from the Odgen ranch to Alva, and that he, in violation of his duty as a bailee, or carrier, had thus embezzled these articles. Acting upon such suspicion, three days later they obtained a search warrant authorizing them to search the defendant's premises for these articles.

Under authority of this second search warrant the officers went to the home of the defendant, in his absence, and took from defendant's stable a set of harness; they took from one of his pastures a galvanized stock water tank; and in an abandoned house about one mile from defendant's home they found and seized a tent which they said was the one taken by virtue of the first search warrant. In defendant's house they also found and seized a gasoline lantern and a sack of sugar.

The vital part of the affidavit for the search warrant under which the first and original search and seizure was made upon the Odgen place is as follows:

"Comes now Hugh Martin, of lawful age, who, being first duly sworn, upon his oath deposes and says: That intoxicating liquors are being manufactured, sold, bartered, given away, and otherwise furnished, and are kept for the purpose of selling, bartering, giving, and otherwise furnishing in violation of the laws of the state of Oklahoma, by certain persons to affiant unknown, in certain buildings, to wit, a frame shanty located on the south of section 17, township 28 north, range 18 W. I. M. in Woods county, Okla."

The affidavit for the second search warrant, authorizing the search of the defendant's premises, is as follows:

"Comes now Harry Hodgson, of lawful age, who being first duly sworn, upon his oath deposes and says: That Henry Reutlinger was employed by him to haul a load of goods from some 40 miles west of Alva to the city of Alva; that the Henry Reutlinger started with said load of goods, wares, and merchandise, but failed to deliver said load to

him. Harry Hodgson, in the city of Alva. That he, Harry Hodgson, verily believes that the said goods, wares, and merchandise, to wit, ten sacks of sugar, one tent, one set of harness, one pressure tank, four sacks of corn, one water tank, were embezzled by the said Henry Reutlinger while he, the said Henry Reutlinger, was bringing the same to the city of Alva, and that the said goods, wares, merchandise above named can be found on the premises of the said Henry Reutlinger, located as follows: The E.½, and the E. ½ of W. ½ of section 21, S. ½ of section 22, W. ½ of section 23, N. ½ of section 27, N. W. ¼ of section 26, all of section 28—all in 29—18 (2,160 acres)."

The affidavit for the search warrant for the Odgen premises was defective, because it stated no facts upon which a finding of probable cause could be based. The averments in the affidavit amount to a conclusion merely —a conclusion of the affiant. Facts should have been stated, having the force and effect of evidence such as would be competent for the consideration of a jury in a trial for the offense, as distinguished from the ultimate conclusions of the affiant himself. For the reasons and authorities supporting this rule see Hannan v. State, 29 Okla. Cr. 203, 233 P. 249.

But under the circumstances the validity of the first search warrant is immaterial. When Odgen was found where he was in the act of making whisky, the officers had a right to arrest him without any warrant and, as an incident to such arrest, without a search warrant they had a right to seize all implements and vessels used in the violation of law for which he was arrested. Apparently the tent, the harness, the wagon, the several water tanks, and the other things seized were all part of the equipment used in violating the prohibitory law, and therefore legally subject to seizure.

The validity of the second search warrant is also attacked. It is urged that, even if the defendant did fail to deliver some of the goods intrusted to him for trans-

portation, that fact alone would not constitute embezzlement. The affidavit recites his failure to deliver certain of the goods delivered to him for transportation, and states that the affiant believes that they were deposited on the premises of the defendant in transit, and asks for a search warrant to search said premises. The affidavit might have been couched in better terms, but we hold that the affidavit as made contained a sufficient statement of fact to authorize the magistrate to issue the search warrant.

It is claimed further that the affidavit and warrant cover too much territory—2,160 acres. It has been held that, when there is probable cause to believe that a person owning and in possession of several different premises, covering which a search warrant is sought, is in possession of contraband goods, the several premises in his possession may all be included in one search warrant. That being true, it would seem that the "place to the searched," within the meaning of the Constitution and the statutes, might include all of a ranch, however large. Rose v. State, 171 Ind. 662, 87 N. E. 103, 17 Ann. Cas. 228, note 232.

The evidence concerning the identity and actual conversion of these articles was more or less conflicting. The testimony of the defendant indicates that he may not have been as drunk as he pretended he was, from the fact that he seems to have had a fairly clear recollection of things that transpired which were in his favor, but a poor recollection of things that might be construed against him. This court will not weigh conflicting evidence; that is for the jury.

The allegations of the information are sufficient, and the instructions of the court fairly covered the issues joined. The objections to the introduction of alleged incompetent evidence, and to the rejection of certain evi-

dence offered, have all been examined. Some of these were waived or cured, subsequently, and none are of sufficient importance to disturb the verdict.

The judgment of the trial court is affirmed.

DOYLE and EDWARDS, JJ., concur.