## LAYMAN v. STATE.

No. A-11013.   Dec. 21, 1949.

(213 P. 2d 300.)

R. O. Green and White & Parris, Eufaula, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J.   Defendant, Alonzo Layman, was charged in the county court of McIntosh county with the unlawful possession of intoxicating liquor, to-wit:   One

gallon of whisky. He was tried, convicted, sentenced to pay a fine of $50 and to serve 30 days in the county jail, and has appealed.

The only question presented is as to the validity of the search warrant, and the failure to suppress the evidence secured by reason thereof. No written motion was filed prior to the trial, and no hearing had or evidence offered thereon, as is the usual procedure followed. The question was first raised when the sheriff of McIntosh county was placed upon the witness stand and began to testify as to the search of defendant's premises. The objection was overruled, and counsel for defendant at the close of the trial made an oral motion to suppress the evidence, and a motion for a directed verdict, which the court overruled, after excusing the jury and considering the motion as a question of law.

The evidence revealed that the sheriff of McIntosh county, Clarence F. Douglas, procured a search warrant for the purpose of searching the premises of defendant for intoxicating liquor. These premises were described in the search warrant, which was introduced in evidence without objection and with the consent of the defendant, as follows:

"* * * in said county and state, to wit: At and on the E½ NE¼ & SW¼ NE¼ & S½ NW¼ & N½ SE¼ & N½ SW¼ of section 34, township 9 north, range 14 E. same being the residence, home and place of abode of the said Alonzo Layman, together with the barns, smokehouse, crib, grainery, garage, and other buildings and houses thereon * * *."

The evidence revealed that the defendant's home and improvements were located on 40 acres of the above-described land, to wit: the southwest quarter of the northeast quarter of said section. That all of the land described

in the search warrant was owned by the defendant. There were four sets of improvements on the land. Mrs. Brandon, the mother-in-law of defendant, lived in one of the houses on an 80-acre tract, Fred Farbolt lived on a portion of the acreage, and a man by the name of Billy Matthews lived on a portion. All of the land was contiguous, and no section lines were open. The 40 acres occupied by defendant was separately fenced. The sheriff and one of his deputies, after securing the search warrant, went directly to the premises of defendant, whom they had known for a number of years. In the absence of defendant, the search warrant was served on his wife, and a search of the premises, including the barns and outhouses, was begun. Sheriff Douglas soon found one gallon of "moonshine, non-taxed" whisky, buried about 10 feet from defendant's house. Deputy Sheriff W. P. Franklin also saw this whisky as it was dug up. Both officers testified it was whisky. Defendant was later arrested and charged with the unlawful possession of same.

Defendant was placed on the witness stand, but was only questioned with reference to a description of the premises, the four sets of improvements thereon, and the occupation by the three different parties. He did not deny the possession of the whisky, or say that he had it for his own personal use.

Counsel for defendant, for reversal of this case, contend that at the trial the undisputed evidence showed there were other families living on and having control of portions of the acreage described in the search warrant; that defendant occupied only 40 acres of the 360, and that therefore the search warrant was what is known as a blanket search warrant; and that it did not meet the requirements of the law with reference to a proper description of the premises searched.

The defendant cites but two cases: Aldridge v. State, 72 Okla. Cr. 298, 115 P. 2d 275, and Herrion v. State, 79 Okla. Cr. 48, 150 P. 2d 865.

In the Aldridge case [72 Okla. Cr. 298, 115 P. 2d 276], the premises involved were described as:

"Chas. Aldridge and upon the following described premises, located as follows: Claremore Rooms East 2nd St., City of Wewoka in Seminole county, Oklahoma. * * *"

The evidence showed that the Claremore rooms was a four-family apartment house, two up and two downstairs. Defendant lived in one apartment downstairs. He did not own the building, only had control of one apartment. This court, opinion by Jones, J., reversed that case, holding that the warrant was intended to operate, and did operate, as a blanket search warrant, covering the private place of abode of several people, and was therefore void, citing United States v. Inelli, D. C., 286 F. 731, which has been cited with approval by this court many times.

In the Herrion case, the search warrant described 80 acres of land, being: "Lots 1 and 2, in section 5, 1 south, 3 east, known as Alta Vista Cabins, occupied by Elbert Herrion."

The evidence disclosed that in addition to the cabins allegedly under the control of the defendant, there were four other farm houses located on this tract. This court held the warrant to be a blanket search warrant, and reversed the case.

The Attorney General, while admitting that the two cases cited by defendant sustain his position, cites a number of cases as not being in harmony with the said two above cases, and being: Reutlinger v. State, 29 Okla. Cr. 290, 234 P. 224; Weisband v. State, 69 Okla. Cr. 79, 100

P. 2d 297; Pitzer v. State, 69 Okla. Cr. 363, 103 P. 2d 109: Peters v. State, 71 Okla. Cr. 175, 110 P. 2d 300; Staley v. State, 73 Okla. Cr. 355, 121 P. 2d 324.

We shall not lengthen this opinion by taking up each of these cases, but shall consider here the two cases of the list quoted from by the Attorney General and said not to be in harmony with the Aldridge and Herrion cases, and being Reutlinger v. State, supra, and Staley v. State, supra.

In the Reutlinger case [29 Okla. Cr. 290, 234 P. 226], the court said:

"It is claimed further that the affidavit and warrant cover too much territory—2,160 acres. It has been held that, when there is probable cause to believe that a person owning and in possession of several different premises, covering which a search warrant is sought, is in possession of contraband goods, the several premises in his possession may all be included in one search warrant. That being true, it would seem that the 'place to be searched,' within the meaning of the Constitution and the statutes, might include all of a ranch, however large. * * *"

We do not find any conflict as contended, for the reason that there is no dispute but that Reutlinger owned and had exclusive possession of the entire 2,160 acres. It may be that he had hired hands and servants. The record is silent as to that. The important thing is that he had exclusive possession, whether in person exclusively or in person and by others.

In the Staley case [73 Okla. Cr. 355, 121 P. 2d 325], the affidavit stated that liquors were being kept in violation of the law by defendant on "Lots 12 to 19, in Block A of the Dewaides Addition in the City of Elk City, Beckham County, State of Oklahoma." It was further

alleged that the premises described were not the private residence of the defendant or any other person. It developed on trial that defendant did not occupy or have control of lot 12, but that it was a vacant lot belonging to another, and not within the curtilage of any residence. There was no other building or improvements of any kind on any of the property described in the search warrant other than the building leased by the defendant, and consisted of a filling station, dance hall and restaurant in the same building. There could be no misunderstanding from the description in the search warrant as to the property to be searched, because, as stated, there was no other improved property described, and defendant had control of all improvements, so that it was held that the search warrant was not a blanket warrant.

In the late case of Wallace v. State, 89 Okla. Cr. 365, 208 P. 2d 190, in an opinion by Brett, J., this court held:

"Where a search warrant describes premises upon which are located more than one house in which persons reside other than the accused, the same is what the law denominates a blanket warrant, and is ordinarily insufficient in law to sustain a search."

In the above case the search warrant described the premises as a "frame building occupied by Ernest Wallace, used as such and also as a storage for liquor; also barns, caves, garages, and all outbuildings located on * * * Lot 1-2-3-4 in Block 85 in that part of the City of Hugo known as Original Townsite, Choctaw County, Oklahoma * * *."

It developed from the evidence that Block 85 had been intersected by "A" Street, and that Lots 1 and 2 were located on the west side of "A" Street and Lots 3 and 4 were located on the east side of "A" Street, and that on each side of the street there was located a frame

building, the defendant owning the building on the west side of the street, and being a grocery store, and the building on the east side of the street being owned by another person and used by the Hugo Candy Company. There was no language in the search warrant to distinguish between the buildings. It is pointed out in the opinion that:

"This court has held that the test of the sufficiency of a search warrant is, whether an officer unfamiliar with the location of the defendant's premises would have had difficulty in locating it from the descriptive averments contained in the warrant, without seeking aid from any other source than that set forth in the warrant."

It is true that many of the cases that have had the attention of this court have been close cases, and in order to understand the rules of law announced, it is necessary to give careful study to the facts in the respective cases. The within cases should be distinguished from the cases where there may have been minor errors in the legal description in search warrant, where the description may have been by metes and bounds, and question of meaning raised, misspelling of street name, or question as to correctness of street number, and questions of fact raised.

In the within case, the defendant owned the 360 acres described, it is true, but he only had exclusive possession of 40 acres. As a basis for a search warrant, an affidavit has to be filed setting out facts, and the person having knowledge of facts sufficient to justify the issuance of a search warrant would certainly be able to particularly describe the place to be searched. In the present case, the sheriff obtained from the county clerk's office, a description of the entire farm, and apparently had knowledge that only 40 acres were under control of the defendant. It would have been an easy matter from the plat

of the entire tract to have isolated the tract that he knew to be fenced off, occupied and under the control of the defendant, and to have described that. It would have required very little more trouble, and thereby he would not have included homes, though merely occupied by other persons as lessees, that nevertheless were just as much entitled to protection from unlawful search due to alleged law violation of the landlord or lessor, as would be the home of the citizen with fee-simple title. As it was, the sheriff from the description given could not have determined what particular house on the 360 acres was occupied by the defendant and the sheriff was not limited in his search. The fact that he did not search the other homes makes no difference. This sheriff appears to have been a reasonable and conservative person, but that fact does not guarantee that other officers at other times would be.

Here it came to pass that one gallon of whisky was found buried in the defendant's yard, and the law would presume that having such quantity of liquor, defendant had it for sale. But it is too easy for the prosecution, and sometimes the courts, in order to convict a person of some particular infraction of the law where the guilt is beyond doubt, to overlook basic rules that stand in the way, and by so doing whittle away that freedom guaranteed by our Constitution, and that forms the basis of true democracy. It might be profitable for more of our citizens to review the struggles of our ancestors and the price they paid in blood and tears to give us the freedom we now enjoy and to give us a country the oppressed peoples look to with supplication and yearning. The last 30 years have demonstrated with startling and dramatic force the price a people may pay by giving way to the exigencies of the moment, —liberties they may never re-

gain. It is the duty of the courts to stand firm in the protection of such rights. See Bill of Rights, § 30; Tit. 22 O.S.A. § 1226; Tit. 37 O.S.A. § 184.

The language used in United States v. Inelli et al., 1923, supra, is most appropriate and illustrative of what we have in mind. The court, by per curiam opinion, said:

"This motion concerns the law of arrests, searches, and seizures. They have been made time out of mind. The power to make them is an absolutely necessary power. Experience, however, has taught us that the power is one open to abuse. The most notable historical instance of it is that of lettres de cachet. Our Constitution was framed during the seethings of the French Revolution. The thought was to make lettres de cachet impossible with us. Protective guards have in consequence been thrown around us, to lessen the harrassments and violations of individual rights to which we might otherwise be subjected. Such laws are seldom intentionally violated. What usually happens is that, in the zeal to perform one duty, the other is disregarded or remains unknown. This innocence of motive, however, is no justification. The law, and all laws, must be regarded. This is expected of all good citizens. To the judges it is a special command. Let it not be forgotten that there were prohibitions in the Constitution before the Eighteenth Amendment. Among them are the Fourth and Fifth. If they afford protection to the guilty, this is the price to be paid for the general good. One prohibition is that no one shall be compelled to give evidence against himself. If anything in the possession of the accused is taken from him by unlawful force, to be used in evidence against him, it cannot be so used in violation of his rights.

"The present motion is based on this proposition. The evidence here was secured by a search warrant. The question, then, is: Did this search warrant issue in accordance with law? The rights and privileges saved to individuals by the Constitution cannot be lessened. Con-

gress may accord as much more protection as is thought to be well. It is to be noted that by the Constitution arrests, searches, and seizures are not forbidden. It is only unreasonable ones which are prohibited. Search warrants are not condemned, but the issuance of them is regulated."

For the reasons hereinbefore mentioned, the judgment and sentence herein involved should be and the same is hereby reversed, and the defendant ordered discharged.

JONES, P. J., and BRETT, J., concur.