WILLIAMS v. STATE.

No. A-11466.   Feb. 6, 1952.

Rehearing Denied Feb. 27, 1952.

(240 P. 2d 1132.)

Edgar B. Maggi, Bristow, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J.   Thomas Williams was charged by information filed in the superior court of Creek county with the crime of possession of intoxicating

liquor with the intent to sell the same; was tried before a jury, convicted and his punishment assessed at a fine of $50 and confinement in jail for 30 days. Appeal has been duly perfected to this court.

The record discloses that prior to trial defendant filed a motion to suppress the evidence, setting up the insufficiency of the affidavit upon which the same was based; that the property described in the affidavit and search warrant was not so properly and particularly described as to constitute sufficient grounds for a lawful search and seizure; that the search warrant was not fully issued, served and returned as provided by law.

The search warrant was based on an affidavit filed by Earl Sellers, a deputy sheriff, and the warrant was delivered to him for service. Material parts of the affidavit and that will here receive consideration, read:

"That intoxicating liquors are being sold, bartered and given away, and are being kept and stored for the purpose of sale, barter and gift, in violation of the prohibitory laws of the State of Oklahoma, on the following described premises and the buildings thereon, to-wit:

"Log Cabin Inn, located on Highway 66, in Sec. 18, Twp. 16, Rgn. 9, Creek County, Oklahoma, on each side of highway, and premises

"Little Log Cabin Inn located on Highway 66, in Sec. 18, Twp. 16, Rng. 9 Creek County, Oklahoma, on west side of highway, and premises

"Residence of Thomas Williams, out houses, garage and grounds, located at 416 South Walnut Street, Bristow, Oklahoma.

"One 1949 Pontiac Automobile, license No. 5-6858, 1949, kept at either or all of said locations and on highway 66 between said locations.

"That the reason for affiant's knowledge is from personal knowledge. Having seen Thomas Williams break bottle containing liquor, whiskey, gin or rum, on said premises. Observing and having seen drunk people in and on said premises. That the premises bears the general reputation of a place where intoxicating liquor can be purchased, had and drunk. That Thomas Williams bears the reputation of a bootlegger and person who sells intoxicating liquor. And from the affidavits hereto attached on the back hereof.

"Affiant further states that persons have been seen to go upon said premises in a sober condition and to come away therefrom in an intoxicated condition, and affiant knows of these things of his own knowledge.

"That although the dwelling house on said premises is pretended to be used as a residence house, the same is in truth and in fact a public resort where persons are accustomed to congregate and gather for the purpose of buying and drinking intoxicating liquors."

The material parts of the search warrant, and that will receive consideration, read:

"In the Name of the State of Oklahoma:

"To the Sheriff, Under Sheriff, or any Deputy Sheriff or Constable or Police Officer of Creek County, Oklahoma, Greetings: * * *

"You Are Therefore Hereby Commanded to search, either in the day or night, the following described premises, situated and being within Creek County, Oklahoma, to-wit:

"Log Cabin Inn located on Highway 66, in Sec. 18, Twp. 16, Rng. 9 Creek County, Oklahoma, on east side of highway and premises thereto

"Little Log Cabin Inn located on Highway 66, in Sec. 18, Twp. 16, Rng. 9 Creek County, Oklahoma, on west side of highway and premises thereto

"Residence of Thomas Williams, outhouses, garage and grounds located at 417 South Walnut Street, Bristow, Oklahoma

"One 1949 Pontiac Automobile, license No. 5-6858, 1949, kept at either or all of said locations and on highway 66 between said locations."

The return reads as follows:

"I received this warrant on the 2 day of May, A.D. 1949, and served the within named by delivering a true copy on the 2nd May 1949.

"Executed the same by serving a copy hereof as follows: The following is a correct list of all property seized by me hereunder: 48½-pints Sunnybrook Whiskey, 24½-pints Seg. 7 Crown, 33 pints Segrams 7 Crown, 15 pints *gen.*

"Same property is now in my possession Sheriff's office under lock and key.

> "Lee Johnson, Sheriff
> By /s/Earl Sellers, Deputy
> /s/ H. T. Gay, Chief of Police."

The evidence on motion to suppress developed that Earl Sellers, deputy sheriff of Creek county, signed the affidavit for search warrant, and on obtaining the search warrant kept the original and several copies and gave a copy to Hughey T. Gay, chief of police of the city of Bristow. Sellers went to the Log Cabin Inn, served a copy of the warrant on an employee there and thereafter made a search for whisky, but found none. He did not search the Little Log Cabin Inn. As Sellers was leaving the Log Cabin Inn he saw the defendant drive up and he went back and searched his car but still did not find any liquor. He advised the defendant that the police were then searching defendant's home. The record is silent as to whether the officer served a copy of the search warrant on defendant prior to searching his automobile.

The evidence further developed that Hughey T. Gay, the chief of police, searched the defendant's home at 416 South Walnut Street, Bristow, and that the liquor listed on return to search warrant was found at that place. In describing location of place to be searched, the figure "7" had either been typed over a "6", or the "6" over the "7", but the officer apparently interpreted the address as 416, as he searched the right place. It was the contention of the State that the "6" had been clearly typed over the "7". In the absence of a photostat copy of the original warrant, we are unable to determine that the number in the warrant was misleading or that there was error in the typing.

The Oklahoma Constitution, Art. II, § 30, reads:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, *describing as particularly as may be the place to be searched* and the person or thing to be seized."

The statutory provision, Tit. 37 O. S. 1941 § 87, reads:

"No such warrant shall issue but upon probable cause, supported by oath or affirmation *describing as particularly as may be the place to be searched*, and the person or thing to be seized." (Emphasis ours.)

From reading the material excerpts from the affidavit for search warrant and search warrant, quoted above, it is immediately noticed that with the exception of the residential property it was not specifically stated that the defendant Thomas Williams was the owner or had under control the other property to be searched and therein described. It might be so inferred, and

the proof on hearing of motion to suppress and on trial so showed, and without denial. But is this sufficient? There are statements in Stouse v. State, 62 Okla. Cr. 46, 70 P. 2d 145, and other cases to the effect that the name of the owner or occupant, if not unknown, is one of the essentials to a particular description of the place to be searched, but a careful reading of a majority of the cases decided by this court where the specific point was involved are to the contrary. The correct rule has been succinctly stated by Judge Jones in Cook v. State, 75 Okla. Cr. 402, 132 P. 2d 349, as follows:

"Where search warrant is issued for the search of specifically described premises only and not for the search of a person, failure to name the owner or occupant of such property in the affidavit and search warrant does not invalidate them; and where the name of the owner of the premises sought to be searched is incorrectly inserted in the search warrant, it is not a fatal defect if the legal description of the premises to be searched is otherwise correct so that no discretion is left to the officer making the search as to the place to be searched."

See the case of Denmark v. State, 71 Okla. Cr. 95, 108 P. 2d 550, where Barefoot, J., reviews the authorities in some detail; and see also State v. Skelton, 36 Okla. Cr. 377, 254 P. 754; Cahill v. State, 38 Okla. Cr. 236, 260 P. 91; and Bowman v. State, 73 Okla. Cr. 248, 120 P. 2d 373.

While it is true that only one property was involved in the above respective cases, we discover no valid reason why the same principle would not apply to plural properties so long as all the separate properties described were being operated by one person, partnership or corporation.

If the properties described were in possession of different owners or occupants then the warrant would have constituted what is known as a "blanket" search warrant, and for such reason would have been void. Combs v. State, 94 Okla. Cr. 206, 233 P. 2d 314.

While for Creek county it might readily be ascertained that each township is "north" and range "east", this would not hold true for all counties, and particularly counties traversed by the base lines. And while we hold the property described in the affidavit for search warrant and search warrant described as acreage sufficient, the better practice is to always set out whether the township is north or south, and range is east or west, in that there could obviously be cases where such failure would constitute reversible error.

From the wording of the allegations setting out the evidentiary facts in the affidavit for search warrant, the affiant caused such evidential statements to apply to all property sought to be searched. While there arises a suspicion that such statements were not meant to apply equally to all the places described, we must conclude that the magistrate performed his duties as required by law and satisfied himself that the statements were actually intended by affiant as grammatically expressed, because if the statements of evidentiary facts were insufficient as to a particular place to be searched, then, as to such place the magistrate should refuse to have the same described in the search warrant, and should refuse authorization for search. Tit. 22 O. S. 1941 §§ 1224-1225; Okla. Const. Art. II, § 30.

The better practice would be to set forth in separate paragraphs the evidentiary facts as to each separate place to be searched and operated by the individual, partnership or corporation to be charged. Just because facts might be set out that would justify the search of one property belonging to and/or operated by a particular person, partnership or corporation, would not justify the search of another property unless sufficient cause might be shown as to such other property to be searched.

It will be noted that the return is not complete. It is not stated to whom a copy of the warrant was delivered or where the liquor listed was obtained, or just what properties were searched, and by whom. Assuming for purpose of return that several different and separate places, each under the control of a defendant, may be named for search in one search warrant, still the return should separately detail what was done at each place, and by whom. This would include information with respect to service of warrant. It should be as complete as to each separate property. This for the protection of the officer obtaining the warrant, as well as fulfilling a duty with respect to the person whose real property is invaded. We do not consider the irregularities disclosed to have been sufficient to have justified the sustaining of the motion to suppress. The return should have been amended to conform to the proof.

This brings us to consideration of a very novel question, and where surprisingly there seems to be a dearth of precedent, and being: "Can only one search warrant lawfully be issued to search more than one place or premises occupied by the same person?" In other words, it is contended that there is no authority under the constitutional and statutory provisions to name more than one place for search in a warrant and to do so makes it general; that one search must be confined to one place or one building.

While we have been unable to find where this court has ever had occasion to consider the exact question where the factual situation was as here, we do find where the principle involved was considered in case of Reutlinger v. State, 29 Okla. Cr. 290, 234 P. 224, 226, though it was applied to a situation involving continuous tracts of land controlled by one person and not separated by distances as here.

It is worth while to note the statement of the court:

"It is claimed further that the affidavit and warrant cover too much territory—2,160 acres. It has been held that, when there is probable cause to believe that a person owning and in possession of several different premises, covering which a search warrant is sought, is in possession of contraband goods, the several premises in his possession may all be included in one search warrant. That being true, it would seem that the 'place to be searched,' within the meaning of the Constitution and the statutes, might include all of a ranch, however large. Rose v. State, 171 Ind. 662, 87 N. E. 103, 17 Ann. Cas. 228, note 232."

In connection with the Reutlinger holding, it might be pointed out that there are numerous cases by this court that are misleading if one is satisfied with the syllabi, usually reading something like this "An affidavit for search warrant for the search of an entire section of land is in violation of section 30, art. 2, of the State Constitution." See Hall v. State, 34 Okla. Cr. 334, 246 P. 642; Bruner v. State, 47 Okla. Cr. 241, 288 P. 369; Seick v. State, 57 Okla. Cr. 364, 48 P. 2d 355; Stump v. State, 66 Okla. Cr. 391, 92 P. 2d 616, and cases therein cited.

As stated by Judge Barefoot in Gransbury v. State, 64 Okla. Cr. 423, 82 P. 2d 240, 243:

"The contention of the defendant that the description of the search warrant embraced too large body of land is untenable.

"A careful examination of the cases cited by the defendant to support this proposition will show that the pivotal point in each case was not that the premises described in the search warrant embraced too large a body of land, but that the facts clearly show that the premises described in the search warrant were owned and occupied by several persons, so that it was in fact several places. Reutlinger v. State, 29 Okla. Cr. 290, 234 P. 224."

In support of the holding on the point in the Reutlinger case Judge Bessey, as heretofore noted, cites the Indiana case of Rose v. State, and a note in Ann. Cas., supra. In the Rose case, a number of adjacent buildings occupied by a defendant were involved. Cited with approval was the case of Hornig v. Bailey, 50 Conn. 40, where there was involved a two-story building, a garden, and a dwelling house a short distance away. The note in Annotated Cases, however, refers to the case of Gray v. Davis, 1858, 27 Conn. 447. In that case the court flatly held: "It is no objection to search warrant under that act [for the suppression of intemperance] that it directs the search of several different places." There were some five places involved, separated short distances along a highway and pond. The warrant stated that these places were used by Henry Gray for a saloon, etc., and that the "family of F. D. Hamilton and others" occupied the dwelling house described, apparently being a part of the sasparilla bottling works to be searched.

In this jurisdiction, of course, a separate warrant would be required to search a dwelling where not used by the same user of the other properties described in the warrant. The instructional portion of this case so far as we are here concerned is the interpretation of the similar constitutional provision in that state, as here, as to the meaning of the word "place." Counsel in that case argued:

"The warrant is not void on its face because it directs the search of several places. All that the constitution requires in this respect is, that no warrant shall issue to search any place 'without describing it as nearly as may be.' Const. of Conn. Art. I, Sec. 8. So long as the place searched is thus described, the proceeding is not affected by the fact that other places are also described. A general search warrant, which the law condemns and which this provision of the constitution was intended to prevent, is a warrant to search all places, without describing them. It is better in every respect that several places should be described in and searched by authority of one warrant, than that several distinct warrants, involving greatly increased expenses, should be issued together."

In the opinion of the court, by Sandford, J., it was said:

"The only objection made to the warrant is, that it directs the search to be made in several buildings, when it should have been confined to one. And we are referred to the 8th section of the first article of the constitution of this state, in support of this objection; and to a like provision in the constitution of the United States. The articles referred to provide- 'that the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches or seizures; and [that] no warrant to search any place or seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.' The constitutional provision just recited, was obviously intended mainly for the security of the citizen, that his possessions might not be wantonly invaded, at the discretion, caprice or malice either of private individuals, or of the ministers of the law. But a separate warrant for each suspected place to be searched is not called for either by the letter or the spirit of the constitution, nor requisite for the protection of the public peace, or individual security. To require it would occasion useless delay and expense, and tend to defeat the salutary objects of the law." (Emphasis ours.)

The reasoning of the court in Gray v. Davis, supra, seems to us to be sound. The nature of the commercial development and evolution in this country in the intervening 94 years has introduced the chain groceries, drug stores, motor courts, restaurants, and other businesses owned and operated in a city or county by an individual or by a partnership or by a corporation. Why should not a number of such places where proper affidavit filed setting out facts that would

justify issuance of a search warrant, not be included in one warrant? No good reason why this should not be done has been suggested and we can think of none. Certainly it is not forbidden by the constitution and statutory provisions heretofore quoted. Of course where separate families may live· in any of the buildings, the apartment or house so occupied, must be eliminated by proper exception and reference from the search, as where there may be a duplex, or apartments, or motor courts, as otherwise the warrant would constitute a blanket warrant.

The question arises as to who should make return and swear to such return to the search warrant. In the present case the return was executed both by the deputy sheriff, who procured the warrant, and the chief of police who aided the deputy and· separately searched one of the properties described in the warrant.

Tit. 22 O. S. 1941 § 1227, provides:

"A search warrant may in all cases be served by any of the officers mentioned in its direction, but by no other person except in aid of the officer, on his requiring it, he' being present, and acting in its execution."

Tit. 22 O. S. 1941 § 1233 provides:

"The officer must forthwith return the warrant to the magistrate, and deliver to him a written inventory of the property taken, made publicly, or in the presence of the person from whose possession it was taken, and of the applicant for the warrant, if there be present, verified by the affidavit of the officer, and taken before the magistrate, to the following effect:

"I, A. B., the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all the property taken by me on the warrant."

This court has held that the service of a search warrant must be confined to the officer or officers to whom directed. In the case of Love v. State, 53 Okla. Cr. 346, 11 P. 2d 769, 770, the warrant was directed: "To any sheriff or constable of McIntosh county". It was executed by a deputy sheriff (an officer not directed to make the search). In was insisted that to be valid, the search warrant should have been executed by the sheriff in person, or that the sheriff should have been present if he required the services of a deputy. It was held that a sheriff's deputy is his agent and as such he may do any ministerial act that his principal may do, and that the service of a search warrant directed to a sheriff by a deputy sheriff is the act· of the sheriff whether personally present or not, and that the purpose of the statute, Tit. 22 O. S. 1941 § 1227, supra, is to prevent abuse of this process ·by private persons. The warrant may not of course be directed to a private person.

In the case of Dunn v. State, 40 Okla. Cr. 76, 267 P. 279, a federal prohibition officer who was a private person so far as the state statutes were concerned, was held to be without authority to execute state process, except in aid of state officer, who must be personally present.

In the within case deputy sheriff Sellers testified that the chief of police held a commission as a deputy sheriff, but it will also be noted that the warrant was directed: "To the sheriff, under sheriff, or any deputy sheriff or constable or police officer of Creek County, Oklahoma."

The warrant could be executed by any of the officers to whom directed. Dunn v. State, supra. But where the officer procuring the warrant requires the aid of a private person, as we have seen, he must be personally present

with said person on execution. The reason for this is obvious. Such person would not be bonded and process could be greatly abused to permit such. Fowler v. State, 80 Okla. Cr. 80, 157 P. 2d 223. Clearly the sheriff, where a number of places to be searched are included in one search warrant, would not have to accompany his deputies to each place; the search might be made simultaneously, and even though the warrant was to the sheriff. Here, however, "police officers and "deputy sheriffs" were particularly included among the officers directed to serve the same. If the direction had not included "police officers" then the service would not have been good unless the police officer also held a commission as deputy sheriff. The record, as stated, shows that the chief of police was also a deputy sheriff, though he signed the return as "chief of police", which, under the facts stated, was sufficient.

It would seem logical that the responsibility for the return and inventories would rest with the officer procuring the warrant, or to whom the magistrate delivered the same, and it would be necessary for him to tabulate a full report on the service of copy of warrant, the results of the search, as to each property searched, and the return should be executed by him. If the officers assisting him are not his deputies, there would be no harm in his requiring them to execute the return with him, though we hold that such is not required under the statute, for while a number of properties may be involved, but one search warrant was issued. The return of course is subject to amendment and where the original is lost a copy may be substituted as provided by statute, or where the officer fails to make return it may be made any time prior to trial. Viadock v. State, 30 Okla. Cr. 374, 236 P. 56; Crim v. State, 68 Okla. Cr. 390, 99 P. 2d 185; Hensley v. State, 53 Okla. Cr. 22, 3 P. 2d 211.

From a consideration of the record and all the testimony at hearing, we conclude that the court did not err in overruling the motion to suppress.

A demurrer to the sufficiency of the information was not interposed.

At trial Hughey T. Gay testified that he was the chief of police at Bristow and also held a commission as deputy sheriff of Creek county, and that he searched defendant's residence described in the search warrant and found in a closet in said residence the liquors set out in the return, and being two and a half cases. One bottle of whiskey and one of gin were introduced in evidence. The defendant did not testify and offered no evidence.

While it is true that the officers found no liquors at any places searched other than at the residence, and failed to introduce any evidence to show that defendant's home was a place of public resort or bore the general reputation as being a place where intoxicating liquors might be procured, nevertheless, by reason of the amount of liquor found, the State made out a prima facie case of possession of intoxicating liquors with intent to sell, which means, of course, that there existed that degree of proof which unexplained or uncontradicted was alone sufficient to establish the unlawful intent if it be credited by the jury. Smith v. State, 62 Okla. Cr. 33, 69 P. 2d 671. Accordingly, there was raised a question of fact for the determination of the jury as to the intent with which the possession was had. Tit. 37 O. S. A. § 82; Rainey v. State, 71 Okla. Cr. 1, 107 P. 2d 371; Morse v. State, 63 Okla. Cr. 445, 77 P. 2d 757; Thomas v. State, 70 Okla. Cr. 404, 106 P. 2d 836; Perry v. State, 83 Okla. Cr. 162, 174 P. 2d 388; Gentry v. State, 85 Okla. Cr. 296, 187 P. 2d 1010; Hood v. State, 93 Okla. Cr. 122, 235 P. 2d 1032. The jury determined the issues against the defendant.

Counsel for defendant contends, nevertheless, that the case should be reversed by reason of alleged prejudicial remarks of the trial judge during the trial. It appears that it was the theory of the county attorney at trial that the

defendant was keeping the liquors found at his residence for the purpose of sale at his restaurant, the Log Cabin Inn. The prosecution attempted a burden not required by the facts and attempted to show that the Log Cabin Inn was, first, a place of public resort; and, second, that it bore the reputation of being a place where intoxicating liquors might be had. The officers who testified failed to state any facts to support the second objective. But deputy sheriff Sellers had obtained, prior to the search, a joint affidavit signed by one Billy G. McNeese, Robert Holcomb and Leon Swoffer to the effect that on the night of May 1, [1949] in the morning, they were present at the Log Cabin Inn north of Bristow, and that there were numerous persons there who were drunk and intoxicated, and that a fight occurred between McNeese and one Louis Vandiver; that affiants had been there before and on those occasions people were drunk and intoxicated. At trial neither Holcomb nor Swoffer testified to suit the prosecution. Holcomb stated that he saw a fight between McNeese and another. He was asked if they were drunk or sober, and answered that they were not drunk, which was contrary to the statement in the affidavit. The following took place:

"Mr. Cheatham [Ass't Co. Atty.]: Your Honor, may I send for the affidavit? The Court: I suggest the affidavit be brought in. If these witnesses are not telling the truth, the Court is going to order charges filed against them for perjury."

Then the court made the following statement in the presence of the jury:

"The Court: We will just hold this trial up here a minute until this affidavit is brought in. If this witness is perjuring himself, the court is going to see that charges are filed. With all fairness to the witness, you have an opportunity to tell what was in the affidavit. You have an opportunity now to do it. The court is going to ask for this affidavit to be brought into court. If you are not trying to tell the truth, the court is going to see that you are prosecuted for perjury, which is a penitentiary offense."

The record discloses that a five minute recess was ordered, and upon resumption of the trial, defendant moved for a mistrial, which was overruled and exceptions to the ruling taken.

Counsel contends that the remarks above quoted, and uttered by the court in the presence of the jury, deprived defendant of a fair and impartial trial, which is guaranteed all persons, and which it is the duty of the court to uphold. Cited are the cases of Harrison v. State, 11 Okla. Cr. 14, 141 P. 236; Koontz v. State, 10 Okla. Cr. 553, 139 P. 842, Ann. Cas. 1916A, 689; Stricker v. State, 26 Okla. Cr. 141, 222 P. 704; Westfall v. State, 30 Okla. Cr. 115, 235 P. 270; Little v. State, 72 Okla. Cr. 273, 115 P. 2d 266; and Hill v. State, 76 Okla. Cr. 371, 137 P. 2d 261. In the first case cited this court stated:

"It is the duty of trial courts to refrain from allowing their actions or words to indicate to the jury their opinion of the credibility of any witness who testifies in the case upon trial before them, or of the merits of any such case."

The above rule has been uniformly adhered to by this court from the beginning, and in view of such rule it is at once apparent that the quoted remarks of the trial judge made in the presence of the jury cannot be approved, and under imaginable circumstances might constitute reversible error. Here the record discloses that the State made out a prima facie case against the defendant by evidence of the finding of some two and a half cases of intoxicating liquors at his residence. Whether or not drunk persons had congregated at the Log Cabin Inn could add nothing to the State's case except to cause the jury to

assess greater punishment, unless the defendant had testified and denied that he had the liquor found at his residence for sale, and had claimed that it was for his own personal use or denied that the liquor was his and that he had any knowledge of the liquor being at his home, then the matters the state was trying to get the witness to testify to might have become material and have had a vital bearing on the issue of the guilt or innocence of defendant. The statement in the affidavit was that witnesses had on at least two occasions seen drunk people at the Log Cabin Inn, but it was not stated that they obtained the liquor at that place or even that they had ever seen any person come there sober and leave intoxicated. The punishment assessed by the jury was very light. If the punishment had been excessive it might be reasonable to conclude that the remarks of the court influenced the jury as to the amount of punishment assessed. Defendant's guilt is beyond question. Under such circumstances, we must give consideration to the harmless error rule, Tit. 22 O. S. A. § 1068. In Janeway v. State, 62 Okla. Cr. 264, 71 P. 2d 130, 131, we said:

"Under the harmless error doctrine, which has been firmly established by this court in construing the statutes of this state, where the guilt of defendant is clearly established, and there is no reason to believe that on a second trial an intelligent and honest jury could or reasonably would arrive at any other verdict than that of guilty, a new trial will not be granted except for fundamental errors."

By reason of what has been said the verdict and judgment appealed from is hereby affirmed.

BRETT, P. J., and JONES, J., concur.