THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAFAEL VÉLEZ LÓPEZ ET AL., Defendants and Appellants.

No. 16905. Decided September 18, 1961.

468

*S. L. Lagarde Garcés, Luis E. García Benítez,* and *José Rafael Gelpí* for defendants-appellants. *J. B. Fernández Badillo, Attorney General of Puerto Rico,* and *Arturo Estrella, Assistant Attorney General,* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, and Mr. Justice Serrano Geyls and Mr. Justice Rigau.

Mr. Justice Serrano Geyls delivered the opinion of the Court.

 Appellant raises several questions, all of which bear on the search warrant. He maintains, in the first place, that said warrant is void because it was issued in the name and by the authority of the "Commonwealth of Puerto Rico" instead of "The People of Puerto Rico," as required, in his opinion, by § 10 of the Federal Relations Act and Art. VI, § 18 of our Constitution.

The said § 10 in its pertinent part [1] provides that "all penal or criminal prosecution in the local courts shall be conducted in the name and by the authority of 'The People of Puerto Rico.'" Article VI, § 18 of the Constitution employs the same language, practically verbatim: "All criminal actions in the courts of the Commonwealth shall be conducted in the name and by the authority of 'The People of Puerto Rico' until otherwise provided by law."

██ Appellant maintains that the said provisions are applicable to a search warrant because the latter "is, by its essence and nature, a criminal prosecution" and "is a judicial process invoked at law in aid of the prosecution of offenses." Even assuming that such statements are correct, the issue raised by the appellant is untenable. What the said provisions require is that "all criminal actions" be conducted in the name and by the authority of "The People of Puerto Rico." It is clear that that language can not refer to other steps prior to the commencement of a "criminal action."

 It is to be noted that § 10 contains two requirements. The first makes it the obligation "to run" "all judicial process" in the name of the "United States of

---

[1] The complete text is the following: "That all judicial process shall run in the name of 'United States of America, SS, the President of the United States,' and all penal or criminal prosecution in the local courts shall be conducted in the name and by the authority of 'The People of Puerto Rico'; and all officials shall be citizens of the United States, and, before entering upon the duties of their respective offices, shall take an oath to support the Constitution of the United States, and the laws of Puerto Rico."

America, *ss*, the President of the United States," and the second "to conduct" all "penal or criminal prosecutions" in the name of "The People of Puerto Rico." The clear differences between the words employed in the two clauses point to the fact that the scope of the second requirement is much narrower than that of the first. The original English is even clearer. It provides that "all *judicial process* shall run in the name of 'United States of America, *ss*, the President of the United States,' and all *penal or criminal prosecutions* in the local courts shall be conducted in the name and by the authority of 'The People of Puerto Rico.'" (Italics ours.) The words "penal or criminal prosecutions," as employed in the said § 10, have a very well-known meaning in the American practice: they mean the mode of the formal accusation of offenders, by any of the means established in criminal procedure. *Donnelly* v. *People ex rel. Bush*, 52 Am. Dec. 459 (Ill. 1850); *Johnson* v. *Scaboard Airline Ry.*, 52 S.E. 644, 646 (S.C. 1905); *State* v. *Cruse*, 94 So. 906, 907 (La. 1922); *People* v. *Miller*, 10 N.E.2d 896 (Ill. 1937). *Cf. Thacker* v. *Marshall*, 331 P.2d 488, 492, n. 4 (Okl. 1958); *Sigmon* v. *Commonwealth*, 105 S.E.2d 171, 178 (Va. 1958);[2] *Rosebud County* v. *Flinn*, 98 P.2d 330, 333 (Mont. 1940). On the contrary, the phrase "judicial process" has a much wider meaning and comprises, naturally, a search warrant. *McAdoo* v. *State*, 253 Pac. 307, 308 (Okl. 1927); *Stewart* v. *State*, 111 P.2d 200, 201 (Okl. 1941).

 Independently of what is meant for different purposes by commencement of a "criminal action" —§ § 4 and 5 of the Code of Criminal Procedure (34 L.P.R.A. § § 4 and 5); *People* v. *Rivera*, 9 P.R.R. 363, 367 (1905); *People*

---

[2] In this judgment the term "prosecution" is defined as "the means adopted to bring a supposed criminal to justice and punishment by due course of law, and consists of a series of proceedings from the time formal accusation is made by swearing out a warrant, the finding of an indictment or information in a criminal court, the trial, and final judgment." (At 178.)

v. *Capestany et al.*, 37 P.R.R. 547, 555 (1928); *People* v. *Báez*, 40 P.R.R. 13, 17 (1929); *People* v. *Lugo*, 58 P.R.R. 185 (1941); *Rivera* v. *Warden*, 80 P.R.R. 800, 819 (1958) — it is not correct to assert that a "criminal prosecution" has been "conducted," since all that exists is a warrant issued by a magistrate in which no one is charged with an offense, and which serves exclusively to authorize the search of a place because there is probable cause, supported by a sworn statement, that in that place there is property (1) "stolen or embezzled"; (2) or used "as the means of committing a felony"; (3) or to be used "as a means of committing a public offense"; or (4) a certain class of property is in the possession of any person except the owner thereof with intent to sell or traffic in the same, or to defraud the owner thereof. Section 502 of the Code of Criminal Procedure (34 L.P.R.A. § 1812); Anderson, 4 Wharton, Criminal Procedure 139 (1957). Whether or not a "criminal action" may be conducted shall precisely depend most of the times on the result of the search. Anderson, *op. cit.* at 125. Consequently, even on the dubious hypothesis that a search warrant is of a criminal character, *cf. People* v. *Pieras*, 72 P.R.R. 728, 732 (1951); *People* v. *Yulfo*, 71 P.R.R. 767–769 (1950), it can in nowise be considered that a "criminal action" is conducted by means thereof.

 The fact that the pertinent sections of the Code of Criminal Procedure, as transcribed in the Laws of Puerto Rico Annotated (34 L.P.R.A. §§ 1811 and 1817), preserved the original phraseology which required that the search warrants be issued in the name of "The People of Puerto Rico," does not militate against this conclusion. We are concerned with an involuntary omission or erroneous interpretation, since Art. IX, § 4 of our Constitution provides that "The Commonwealth of Puerto Rico shall be the successor of The People of Puerto Rico for all purposes. . . ." As in

other sections of the Code,[3] the corresponding change should have been made in those sections.

▉▉▉▉▉ Appellant next maintains that the search warrant is void because the letters "SS" were omitted therefrom in violation of the provisions of § 10 of the Federal Relations Act. This section provides, as has been seen, "That all judicial process shall run in the name of 'United States of America, ss, the President of the United States.'" **In the** warrant under consideration it was stated as follows: "United States of America, The President of the United States, The Commonwealth of Puerto Rico."

The basic rule on which appellant relies and which requires strict compliance with the procedural requirements for the issuance of search warrants, is correct. *People* v. *Rivera,* 79 P.R.R. 697, 708 (1956). But that rule should not be used to invalidate a warrant in the case of a slight and unimportant omission. The words "United States of America, the President of the United States" having been stated in the warrant, the requirement and purposes of § 10 are fully met, and the omission of the letters "SS" (which merely mean scilicet or "to wit"), though undesirable, is of such a trivial and cabalistic character that it should not be sufficient by itself to invalidate the warrant. *Seay* v. *Shrader,* 95 N.W. 690, 691 (Neb. 1903). Other clerical errors of greater importance have been held insufficient for that purpose. *Pera* v. *United States,* 11 F.2d 772 (Cir. 9, 1926); *Baker* v. *Commonwealth,* 264 S.W. 1091, 1092 (Ky. 1924); *Bell* v. *State,* 88 A.2d 567, 568 (Md. 1952); 1 Varon, Searches, Seizures and Immunities 362 (1961); *cf. McCord & Mercantile Co.* v. *Glen,* 21 Pac. 500, 501 (Utah 1889); *Babcock* v. *Kuntzsch,* 32 N.Y. Supp. 587 (1895).

▉▉▉▉ As ground for his third assignment, appellant maintains that the sworn statement made by agent López

---

[3] We have also examined the constitutional debate on this matter, *Journal of Minutes of the Constituent Convention of Puerto Rico,* p. 795, and there is nothing therein to support the interpretation suggested by the appellant.

merely contains "conclusions" because it states that the defendants started to check, count, and tie small packages of clandestine "bolipool" tickets in different colors. The fact is that in that statement agent López describes adequately a cottage and its location, and asserts that he knows for a fact that Rafael Vélez and Carmelo Martell "have in their possession and operate clandestine *bolipool bancas* consisting of *bolipool* tickets in different colors containing printed three-digit numbers and lists containing three-digit numbers connected with the illegal game of *bolipool*." He then adds that he knows it for a fact because on a certain date and hour he saw those persons in the cottage "checking, counting, and wrapping clandestine *bolipool* tickets of different colors, which they placed apart and listed down three-digit numbers of those used for the clandestine illegal *bolipool* game." He goes on to describe the illegal game of *bolita* or *bolipool* and requests the issuance of a search warrant. That sworn statement is undoubtedly sufficient and complies with the requirements of the law and of the authorities. *People* v. *Rivera, supra* at 702–05; *People* v. *Yulfo, supra.*

The search warrant is also challenged on the ground that it is not specifically directed to a peace officer and because it is directed in general terms, without stating by name the person or agent in charge of its execution. He relies on §§ 501 and 506 of the Code of Criminal Procedure, which provide that the warrant shall be directed to "a peace officer." None of the sections of that Code requires that the "peace officer" be mentioned by name, although, of course, he may be mentioned and, on the contrary, § 507, in providing the form of warrants, provides that "The search warrant must be in substantially the following form:

'District of . . .

'The People of Puerto Rico to *any* marshal, policeman, peace officer, internal-revenue agent, or income-tax inspector, in the district of . . . .' " (Italics ours.) The warrant

474

challenged in this case was directed to "any Peace Officer, Detective, or Policeman in the District of Mayagüez. . . ." That warrant was sufficient. Fricke, California Criminal Procedure 45 (1955); Cornelius, The Law of Search and Seizure 361–65 (1926); *Williams* v. *State*, 240 P.2d 1132, 1139–40 (Okl. 1952).

 Appellants also object to the warrant because policeman López contradicted himself in the sworn statement as well as in the witness stand. We have examined both statements and there is no reason for disturbing the weighing of the evidence made by the trial judge. The contradiction refers to the date of execution which was satisfactorily clarified.

 Lastly, it is argued that the warrant should be invalidated because of the actions of the witness for The People, Emilio Torres. What happened was that policeman López executed the warrant in the company of corporal Torres and signed the return because he physically took charge of executing it. At the hearing of the motion to suppress the evidence Torres also assumed the responsibility because of his rank as López' superior. There is no reason for invalidating the warrant on that ground.

The judgment appealed from will be affirmed.